## SHEPHERD v. PEPPER.

APPEAL FROM THE SUPREME COURT OF THE DISTRICT OF COLUMBIA.

No. 136. Argued November 26, 27, 1889. — Decided March 3, 1890.

Where appeals by five defendants from a final decree were allowed in open court in October, 1885, and the amount of the supersedeas bond as to one of them was fixed at $100, but he never gave it, and the others perfected their appeal, and the record was filed in this court in October, 1886, and, when the case came on for hearing in November, 1889, he asked leave to file a proper bond, it was granted *nunc pro tunc* as of the day of hearing.

S. gave two deeds of trust of a lot of land in the District of Columbia to secure loans made by P. Afterwards he gave a deed of trust of the same lot to secure a loan made by C., that deed covering also a lot in the rear of the first lot, and fronting on a side street. At the time all the deeds were given, there was a dwelling-house on the premises, the main part of which was on the first lot, but some of which was on the rear lot. P., on an allegation that B., a trustee in each of the first two deeds, had refused to sell the property covered by them, filed a bill asking the appointment of a trustee in place of those appointed by the first two deeds. The suit resulted in a decree appointing a new trustee in place of B., " in the deed of trust," but not identifying which one. The new trustee and the remaining old one then sold the land at auction to P.,

under the first trust deed. S. then filed a bill to set aside the sale; and P. filed a cross bill to confirm it. The bill was dismissed. P. then filed, this bill against S. and C., and all necessary parties, to have a trustee appointed to sell the land covered by the three trust deeds, and the improvements on it, to have a receiver of the rents appointed, and to have the rents and the proceeds of sale applied first to pay P. A receiver was appointed, and a decree made for the sale of the entire property, as a whole, by trustees whom the decree appointed, and for the ascertainment by the trustees of the relative values of the land covered by the first two trust deeds and the improvements thereon, and of the rear piece of land and the improvements thereon, and for the payment to P. of the net proceeds of sale representing the value of the land and improvements covered by the first two trust deeds, less the expenses chargeable thereto, and of the residue to C., and, out of the rents, to P., what he had paid for taxes and insurance premiums, and for a personal decree against S., in favor of P., for any deficiency in the proceeds of sale to pay the claims of P.; *Held,*

(1) It was the intention of both S. and P. that the first two deeds of trust should include the rear land as well as the front lot;

(2) The decree in the first suit by P. was so uncertain as to be practically void, and there was no effective appointment of a trustee and no effective sale to P.;

(3) P. was not estopped by that sale from having the property sold again;

(4) P. was not required, as a condition of the sale of the rear lot, to pay the whole of the debt due to C.; and the case was a proper one for selling the property as an entirety;

(5) It was, also, a proper one for the appointment of a receiver of the rents, and those rents in the hands of the receiver, after paying charges, ought to go to make up any deficiency in the proceeds of sale to satisfy the *corpus* of all the secured debts, and ought to be first applied to pay any balance due to P.;

(6) Under § 808 of the Revised Statutes relating to the District of Columbia a decree *in personam* for a deficiency is a necessary incident of a foreclosure suit in equity;

(7) As the notes secured by the deeds of trust bore interest at the rate of nine per cent per annum, until paid, it was proper to allow that rate of interest on the principal until paid, and not to limit the rate to six per cent after decree, because the contracts were not merged in the decree;

(8) The rate of interest on the decree for deficiency is properly six per cent, under §§ 713 and 829 of said Revised Statutes.

(9) The statute of limitation not having pleaded as to any part of the principal or interest, the defendant cannot avail himself of it.

IN EQUITY. Decree in favor of the complainant. The respondents appealed. The case is stated in the opinion.

Mr. William F. Mattingly and Mr. Enoch Totten, for appellants, Shepherd and others, and Mr. Henry Wise Garnett for Mrs. Gray, appellant, filed a joint brief, citing: Carpentier v. Brenham, 40 California, 221; Supervisors of Iowa County v. Mineral Point Railroad, 24 Wisconsin, 93; Howard v. Railway Co., 101 U. S. 837; Thompson v. Roberts, 24 How. 233; Rapalee v. Stewart, 27 N. Y. 310; Duff v. Wyncoop, 74 Penn. St. 300; Swanson v. Tarkington, 7 Heiskell, 612; Tuite v. Stevens, 98 Mass. 305; Grymes v. Sanders, 93 U. S. 55; Rogers v. Higgins, 57 Illinois, 244; Stockton v. Ford, 18 How. 418; McLaughlin v. Barnum, 31 Maryland, 425; Eastman v. Amoskeag M'fg. Co., 47 N. H. 71; Neilson v. Lagow, 12 How. 98; Dudley v. Price, 10 B. Mon. 84; Christmas v. Mitchell, 3 Iredell Eq. 535; Miller v. McIntyre, 6 Pet. 61; Miller v. Bealer, 100 Penn. St. 583; Wagar v. Stone, 36 Michigan, 364; Gilman v. Illinois & Mississippi Telegraph Co., 91 U. S. 617; Railroad Cos. v. Schutte, 103 U. S. 118; Kountze v. Omaha Hotel Co., 107 U. S. 378 · Teal v. Walker, 111 U. S. 242.

Mr. Nathaniel Wilson and Mr. Walter D. Davidge, for appellee, cited: Strong v. Grant, 2 Mackey, 218; Mobile County, v. Kimball, 102 U. S. 691; Gould v. Evansville &c. Railroad, 91 U. S. 526; Gardner v. Sharp, 4 Wash. C. C. 609; Walden v. Bodley, 14 Pet. 156; Hughes v. United States, 4 Wall. 232; Russell v. Place, 94 U. S. 606; Cromwell v. Sac County, 94 U. S. 351; Graham v. Railroad Co., 3 Wall. 704; Davis v. Brown, 94 U. S. 423; Dodge v. Freedman's Savings & Trust Co., 106 U. S. 445; Grant v. Phœnix Life Ins Co., 121 U. S. 105; Keyser v. Hitz, 4 Mackey, 179; Holden v. Trust Co., 100 U. S. 72; Philadelphia, Wilmington & Baltimore Railroad v. Howard, 13 How. 307.

Mr. Justice Blatchford delivered the opinion of the court.

On the 1st of June, 1874, Alexander R. Shepherd and his wife made a deed of trust to Andrew C. Bradley and William H. Philip, conveying to them real estate situated in the city

of Washington, in the District of Columbia, described in the deed as follows: "Part of lot numbered two (2) in square numbered one hundred and sixty-four (164), and bounded and described as follows, viz.: Beginning at a point on North K Street forty-three feet and nine inches ($43\frac{9}{12}$ ft.) east of the south-western corner of said square, and running thence west on K Street forty-three feet and nine inches ($43\frac{9}{12}$ ft.), to said south-western corner of d square; thence northwesterly along the line of Connecticut Avenue about eighty feet and ten inches ($80\frac{10}{12}$ ft.), to the south line of original lot numbered three (3) in said square; thence northeasterly and at right angles with said avenue and along the line of said lot three (3), about eighty-five (85) feet, to intersect a line drawn due north from the point of beginning, and thence due south to the point of beginning." The deed recited that Shepherd was indebted to George S. Pepper in the sum of $35,000, evidenced by a promissory note executed to Pepper, dated June 1, 1874, and payable in five years after date, with interest, payable semi-annually, at the rate of nine per cent per annum, until paid, accompanied by 10 coupon notes for $1575 each, representing the interest; and it conveyed the land in trust to secure the payment of the notes. It gave power to the trustees to sell the premises at public auction, on a default in the payment of the notes or any instalment of interest, and to convey the property in fee simple to the purchaser. Shepherd covenanted in the deed to keep the buildings on the land insured during the continuance of the trust in the sum of $25,000, and to have the policies assigned to the trustees; and that, on his failure to do so, Pepper might do it and the premium he should pay should be considered as secured by the trust deed.

On the 22d of March, 1875, Shepherd and his wife executed to William F. Mattingly and the said Andrew C. Bradley another deed of trust, covering the same premises by the same description as in the first deed, to secure the payment to the said Pepper of a promissory note dated March 22, 1875, for $10,000, payable five years after date, with interest, payable semi-annually, at the rate of nine per cent per annum, until paid, accompanied by 10 coupon notes of $450 each, represent-

ing the interest. The other provisions of this trust deed were in terms like those of the first one, except that the insurance against fire was to be $10,000.

On the 15th of May, 1876, Shepherd and his wife executed a deed of trust to James E. Fitch and Lewis J. Davis, covering premises described as follows: "All that certain piece or parcel of ground situate and lying in the city of Washington, District of Columbia, and known and described upon the ground plat or plan of said city as lot number three (3), in A. R. Shepherd's subdivision of square number one hundred and sixty-four (164), said lot number three (3), fronting forty-three feet and nine inches (43 ft. 9 in.) on K Street N. W., and one hundred and nine feet and one-half inch (109 ft. ½ in.) on Connecticut Avenue." The deed was made to secure the payment of a promissory note for $35,000, made by Shepherd, dated May 15, 1876, given to Mercy Maria Carter, payable three years after date with interest at the rate of nine per cent per annum, payable quarterly. This deed covered the same premises embraced in the first two deeds of trust, and an additional piece of land in the rear of those premises, having a frontage on Connecticut Avenue of 28 feet 2½ inches, and running eastward across the rear part of the premises covered by the first two deeds of trust.

On the 15th of November, 1876, Shepherd and his wife executed an assignment, for the benefit of the creditors of Shepherd, to George Taylor, Henry A. Willard, and Samuel Cross, which assignment covered "lot 3 in square 164." Willard refused to accept the trust, and Peter F. Bacon was duly appointed assignee in his place.

On the 11th of April, 1878, Pepper filed a bill in equity, in the Supreme Court of the District of Columbia, making as defendants Shepherd and his wife, Bradley, Philip, Mattingly, Taylor, Cross and Bacon. The bill set forth the making and contents of the two deeds of trust in favor of Pepper and of the assignment by Shepherd; that Pepper was still the holder of the note for $35,000 and the note for $10,000, and the coupon notes belonging thereto; that there were large arrears of interest due thereon; that the property was largely

encumbered with taxes, and had been sold for the taxes for the year ending June 30, 1877; that Shepherd had failed to keep the property insured, and Pepper had advanced the amount of the premiums of insurance: that Pepper had, in writing, requested the trustees, under the deeds of trust, to advertise the property for sale, but the defendant Bradley, a trustee under each of the deeds, had refused to do so, by a letter to Pepper, in which he also stated "that the trust does not cover the entire area of the house, cutting off about twenty feet of the rear."

There was and is a dwelling-house on the land, which covers the entire width on K Street, and at least a part of it extends the entire depth of the land embraced in the first two deeds of trust; and a part of the rear part of it is built upon the land covered by the deed of trust in favor of Mercy Maria Carter which is not embraced in the two deeds of trust in favor of Pepper.

The bill averred that at the time the two loans were negotiated by Pepper he was informed and believed that the two deeds of trust covered the whole of the house and lots; that he had nothing to do with the preparation of those deeds, but they were prepared by Shepherd or his attorney; that Pepper never saw them until after the negotiations were concluded and the money paid; that Shepherd alone was responsible for any mistake or omission; that at the dates of the deeds of trust the house was completed and occupied by Shepherd as a dwelling; that sub-lot A in square 164, being the premises not covered by the two deeds of trust in favor of Pepper, was at that time owned by Shepherd; that it was understood that the two deeds of trust in favor of Pepper would and did cover the whole area occupied by the house and grounds; that the part of the house not included in those two deeds of trust was what is known as the "picture gallery;" that the rear end of it could be detached without marring or lessening the value of the property; that the plaintiff was entitled to enforce the collection of the moneys due to him, irrespective of any injury which the sale might do to Shepherd or any one holding under him; and that, in any event, the

plaintiff had the right to enforce the sale of so much of the property as was covered by the two deeds of trust in his favor.

The prayer of the bill was that a trustee might be appointed by the court in place of the trustees under the two deeds of trust, with directions and authority forthwith to execute the trusts of the two deeds.

Answers to this bill were put in by Mattingly, Bradley and Shepherd, the answer of Shepherd setting up that the loans to him by Pepper were usurious and void under the laws of the State of Pennsylvania, which governed the contracts. Issue was joined, proofs were taken, and the case was heard at special term, which, on the 12th of May, 1879, entered a decree overruling the defence of usury, and further decreeing as follows; "That James M. Johnston be, and is hereby, appointed trustee in the place and stead of Andrew C. Bradley in the deed of trust, and recorded in Liber ——, folio ——, of the land records for the District of Columbia, and referred to in the record in this cause. This decree is without prejudice to all other rights of defendant." Shepherd, on the 14th of May, 1879, appealed from this decree to the general term; but, after the sale to Pepper hereinafter mentioned, he dismissed his appeal.

Johnston and Philip, claiming and purporting to act under the deed of trust of June 1, 1874, and regarding Johnston as having been appointed trustee in the place of Bradley, under that deed, by virtue of the decree of May 12, 1879, advertised for sale at public auction the premises described in that deed, by the description contained in it. The sale took place on the 23d of October, 1879, and the property was sold to Pepper, at such auction, for $50,000; and Philip and Johnston as trustees, executed and delivered to Pepper a deed of the property.

On the 14th of November, 1879, Shepherd filed a bill in equity in the Supreme Court of the District of Columbia, against Philip, Johnston, and Pepper, setting forth the sale and the deed to Pepper, and alleging that Johnston and Philip acted without authority in selling the property, inasmuch as Johnston was not a trustee under the deed of trust, and the

decree of May 12, 1879, did not confer upon him any power under that deed, nor substitute him in the place of Bradley under it, nor remove Bradley from his office of trustee under it; that it was announced at the sale by the auctioneer that the sale was made subject to taxes estimated at $2700, and that the lot sold did not include the rear part of the building; that the property was knocked down to Pepper for $50,000 and the said taxes; that the price was grossly inadequate; that Shepherd, at the time of the sale, was the owner of a valuable equitable interest in the property; and that the sale was void.

The prayer of the bill was that the sale be set aside and the deed to Pepper cancelled; that the defendants be restrained from interfering with the property, or attempting to enforce at law any legal right claimed as a consequence of the sale or the deed; and for general relief.

Philip and Johnston answered the bill, as also did Pepper. Pepper also filed a cross-bill against Shepherd, Philip and Johnston, setting forth the contents of the original bill and of the answers to it, and praying that the sale to Pepper be decreed to be legal and valid, and the deed to him effectual to convey to him an unencumbered fee simple title to the real estate; for a writ of assistance to put him in possession of the premises; for a receiver to collect the accruing rents; for an injunction to restrain Shepherd and all persons claiming under him from interfering with the plaintiff in respect of the premises and for general relief.

A replication was filed to the answers to the original bill, and Shepherd, and also Philip and Johnston, answered the cross-bill. Issue was joined on such answers and proofs were taken. The case was heard at special term, and a decree was made on the 30th of October, 1880, dismissing the bill, with costs, the decree being made by Mr. Justice James. It stated that Shepherd appealed to the general term from the decree.

On the 24th of December, 1880, Mr. Justice James filed an opinion in the suit, in which he stated that the decree of May 12, 1879, in the suit of Pepper against Shepherd, was inoperative and void for uncertainty. He added: "It purports to

substitute a trustee in one of two deeds mentioned in the pleadings, without designating which of them. It is true that it can be inferred, from the comparative effects of the substitution in the one or the other case, that the court was not likely to intend to substitute Mr. Johnston for Mr. Bradley in the deed which conveyed only an equitable title, but I do not think that I am at liberty to explain and give certainty to the decree by reference to such considerations. It has been suggested that a decree may be explained by reference to the pleadings on which it is based, and this undoubtedly may be done in a proper case; but I do not find that the uncertainty of the decree in this case can be cleared up in that way. It follows that, if the decree is uncertain on its face, the alleged title of Pepper, through Mr. Johnston as substituted trustee, is not a cloud upon the title of the complainant, and consequently this court cannot take jurisdiction to grant the relief prayed. Therefore, the decree must be that the bill be dismissed."

On the 14th of January, 1881, the defendants in the suit of Shepherd against Pepper entered an appeal from the decree of October 30, 1880. On the 11th of February, 1881, Shepherd dismissed his appeal from that decree. A motion by Shepherd to dismiss the appeal from that decree taken by the defendants therein, appears to have been granted by default; and they, on the 25th of February, 1881, filed petitions praying the court in general term to reinstate their appeal. The ground of these petitions was, that the opinion of Mr. Justice James found as a fact that the trustees, Philip and Johnston, had no power to make a sale, which finding did not appear in the decree of October 30, 1880. The court acted upon the petitions for reinstating, by making an order, on the 17th of June, 1881, striking from the files of the court the opinion of Mr. Justice James. This left the decree of the special term, made October 30, 1880, to stand as a decree merely dismissing the bill of Shepherd.

On the 20th of July, 1881, Pepper began the present suit by filing in the Supreme Court of the District of Columbia a bill in equity against Shepherd and his wife; Mercy Maria Carter, who had been married and become Mercy Maria Carter Gray;

Fitch and Davis, the trustees in the deed of trust for the benefit of Mrs. Gray; Bradley, Mattingly, and Johnston, trustees (Philip having died); David R. Bartlett, Bacon and Cross, assignees under the deed of assignment of November 15, 1876, (Bartlett having been appointed assignee in the place of Taylor); and John Alexander and George M. Barker, two of the creditors secured by that assignment, as representatives of that class of creditors.

The bill sets forth the two deeds of trust in favor of Pepper and the deed of trust in favor of Mrs. Gray. It avers that Pepper owns and holds the promissory note for $35,000 and the one for $10,000; that they are both overdue; that a large amount of interest is due upon them; that Pepper has advanced moneys on account of taxes and insurance on the premises covered by the three deeds of trust, which moneys are secured by the two deeds of trust in his favor; that Mrs. Gray still holds her promissory note for $35,000, which is overdue, with interest from May 15, 1877; and that the parties who claim to be secured by the assignment of November 15, 1876, a copy of which is annexed to the bill, are very numerous and cannot without inconvenience and delay be brought before the court. It then sets forth the filing of the former bill by Pepper; the contents of the decree of May 12, 1879; the appeal by Shepherd from that decree; the sale of the property to Pepper by Philip and Johnston, trustees; the filing of the bill by Shepherd, the proceedings thereunder, and the entry of the decree of October 30, 1880; the filing of the opinion of Mr. Justice James; and the order striking that opinion from the files.

The bill further alleges, that it is competent to show at any time the grounds upon which the decree of October 30, 1880, was placed by the opinion of the court; that, as that opinion states that the decree of May 12, 1879, did not give to Johnston any power to sell, the decree of October 30, 1880, was in effect an adjudication upon, and favorable to, the averments in the bill filed by Shepherd; that the sale to Pepper was made without authority, and that the deed of Philip and Johnston to Pepper was null and void; that, as Shepherd had always insisted that

the decree of May 12, 1879, was void and the sale to Pepper a nullity, and to the end that said lot 3 may be sold as a whole, Pepper files his bill in order that an undisputed title to the whole property may be obtained by means of foreclosure proceedings under the decree of the court; that the lot numbered 3 in Shepherd's subdivision of square 164, fronting 43 feet 9 inches on K Street and 109 feet ½ inch on Connecticut Avenue, being the property described in the deed of trust in favor of Mrs. Gray, is improved by an expensive dwelling-house, erected thereon by Shepherd; that the portion of that lot 3 contained in the descriptive clauses of the two deeds of trust given by Shepherd to secure the moneys loaned to him by Pepper, does not embrace all the ground covered by and appurtenant to the dwelling-house, the portion omitted from those two deeds of trust being a lot designated as sub-lot A, fronting about 28 feet 2½ inches on Connecticut Avenue, and running back with that width; that the omission of that strip from those two deeds of trust was either by accident or fraud on the part of Shepherd or his agents; that in either case Pepper is entitled to have the description of the ground in those deeds corrected, so as to include that strip; that by the agreement of Pepper with Shepherd it was provided that Shepherd should grant to trustees, to secure Pepper, all of the real estate covered by his residence on the corner of K Street and Connecticut Avenue, and all the property to be used as appurtenant and connected therewith, and which is designated on the plat books of the city as lot 3 of Shepherd's subdivision of square 164; that, relying upon the fact that the first deed of trust embraced all the property now described as lot 3 in square 164, Pepper agreed to make a second loan on the same property, and therefore the second deed of trust was executed as now found; that, relying upon the belief that both of the deeds of trust embraced all of the real estate used or to be used by Shepherd for his residence and appurtenant thereto, Pepper advanced the $45,000, and relied upon the deeds as his security for the loan, believing that they conformed to his contracts with Shepherd and embraced all the real estate owned at that point by Shepherd and all the land covered by the house and

appurtenant thereto; that he would not have loaned any money to Shepherd if he had known that the deeds of trust did not embrace all of such real estate and the improvements made or to be made at that point by Shepherd, with the yard now belonging thereto; that, after the execution of the deeds and the advance of the $45,000, Pepper discovered that sub-lot A, constituting the rear 28 feet 2½ inches of lot 3 in square 164, was omitted entirely from the deeds, thereby cutting off a portion of the improvements and seriously impairing the security; that the omissions were made by the fraud of Shepherd or his agents, and without any suspicion of the omission on the part of Pepper; that Shepherd states that he fully intended to embrace in the two deeds all the said real estate, and executed the deeds with the belief that all of said property was so included, but that the omission to include all of it was due to accident or mistake on the part of himself or of his agents who prepared the deeds, and without fraud on his or their part; that it was well understood by Mrs. Gray, when and before she loaned the $35,000 to Shepherd, that the two prior deeds of trust in favor of Pepper constituted prior liens on all the real estate embraced in the deed of trust to secure her, that is, lot 3 in square 164; that she made her loan with the belief on her part that both of the prior deeds of trust actually embraced all of the said real estate, and with the belief that Pepper and Shepherd understood that all of said real estate was so embraced; that she had actual notice that Pepper and Shepherd fully intended to embrace in the first and second deeds of trust all the real estate embraced in the third one; that the lien of Pepper under his two deeds of trust is paramount to that of Mrs. Gray, as to all of the real estate referred to in her deed of trust, and ought to be enforced, either by reforming the first two deeds by including therein all of the real estate embraced in the deed in favor of Mrs. Gray, or by enforcing the lien of Pepper on lot 3 as an equitable mortgage prior to any rights of Mrs. Gray therein; that after Pepper had so advanced to Shepherd the $45,000, he learned for the first time that Shepherd, when he executed the first two deeds, had only a tax title to sub-lot A, in square 164; that Shepherd had, since said loans were made

to him, perfected his title to sub-lot A, by buying in all ad-
verse claims, and had paid the money therefor from his own
means; that such sub-lot A was conveyed either to Shepherd
or to some friend as trustee for him; and that in either case
the perfected title will enure to the benefit of Pepper and of
Mrs. Gray.

The bill further alleges that the said principal sums, with
large arrears of interest, are due to Pepper and to Mrs. Gray,
respectively, and sums are also due to Pepper for premiums
of insurance and taxes paid by him; that Shepherd had been
receiving $6000 per annum as rent for the premises and the
furniture in the house; that the incumbrances on the real
estate in favor of Pepper and Mrs. Gray, with the arrears of
taxes, amount to about $120,000, and are increasing at the
rate of about $9000 a year; that the real estate is an inade-
quate security for the sums charged upon it, and cannot be sold
for a sum sufficient to meet even the existing liens on it, and
will not yield from rents an adequate income on the sum
charged upon it; that Shepherd is insolvent, and there are
unsatisfied judgments of record against him in the Supreme
Court of the District of Columbia, besides unsecured debts
estimated by Shepherd to amount to $310,000; that Shepherd
is unwilling and unable to make good the deficiency due to
Pepper, after properly applying the net proceeds of the sale
of the property; and that Bradley refused to sell the property
vested in him as trustee under the first deed of trust, and has
endeavored to delay and prevent its sale.

The prayer of the bill is for the appointment of a receiver
to receive the rents due and to become due for lot 3 and the
improvements upon it; for the appointment of a trustee or
trustees to sell the whole of such lot and improvements; that
the rents and the proceeds of the sale of lot 3 be applied first
to pay said indebtedness to Pepper, with all interest, costs,
charges and expenses due to him by reason of the premises;
that Shepherd may discover the name of the holder of the
legal title to said sub-lot A, and be restrained from receiving
or disposing of any part of the rent paid or to become due for
lot 3 and the improvements thereon; and for general relief.

A restraining order against Shepherd, as prayed for, was issued on the filing of the bill.

Bradley answered the bill, and took the ground that in the first bill filed by Pepper the latter had insisted upon his right to the sale of the property as described in the two deeds of trust made in his favor, and did not ask to have the defective description corrected, and had procured the property to be sold, and had purchased it and received a deed for it, and claimed title to it, by the description contained in those two deeds of trust. Bradley's answer also set up that Pepper had brought a suit at law, on the 20th of April, 1880, against Shepherd to recover on the several promissory notes mentioned in the first two deeds of trust.

The bill was taken as confessed by Fitch, Mattingly, Alexander and Barker.

Mrs. Gray answered the bill, alleging that at the time the deed of trust in her favor was made she was informed and believed that the two prior deeds of trust covered only the property described in them, and that the deed of trust given to secure her was a second lien on the part of lot 3 described in those deeds of trust, and the first lien on the remaining part of that lot; that, relying on that information, which was true, she loaned to Shepherd the $35,000 on the security of that lot; that she had no knowledge or information that Pepper claimed that there was any accident, mistake, or fraud in connection with the first two deeds of trust, or that they should have covered any property beyond what they actually covered; and that Pepper has no right to have the first two deeds of trust amended, extended, or changed, as against her, or any right to any lien on any part of lot 3, as against her, except that part described in the first two deeds of trust. She objects to a sale of lot 3.

Cross and Bacon put in an answer to the bill; and the court, on the 1st of December, 1881, on a hearing, granted an injunction as prayed, against all of the defendants except Alexander and Barker, and appointed a receiver of the rents accrued and to become due. The order states that each of the defendants enjoined appealed from it. Johnston afterwards withdrew his

appeal; and on the motion of Pepper the appeal of the other defendants was dismissed by the general term.

Shepherd put in an answer to the bill, on the 1st of June, 1882, denying that the bill filed by him was dismissed for want of jurisdiction; denying that the omission of sub-lot A from the first two deeds of trust was an accident or a fraud on his part or on that of his agents; and denying that Pepper has the right to have the deeds corrected so as to include sub-lot A; but admitting that he (Shepherd) executed the first two deeds of trust in the belief that the whole property covered by the house was embraced in them. The answer sets up that Pepper has no right to the rents of the house or to the rent of the furniture contained in it, and no interest in the premises except to have them sold and his claims paid out of the proceeds of sale; that the subject matter of the bill is embraced in the prior suit brought by Pepper, which is still pending; and that, if Pepper has any right to relief, he must seek it in that suit by bill of review or otherwise.

On the 21st of July, 1882, Pepper amended his bill by averring that lot 3 was wholly insufficient security for the debt admitted by Shepherd to be due to Pepper and charged thereon, and could not be sold for a sum sufficient to meet the debt so admitted, and would not yield in rents an adequate income on the value of the same, even assuming such value to be equal to the amount of the debt admitted to be due to Pepper and charged on the lot. The amendment also stated that Philip died intestate, leaving surviving him a widow and four children, infants, whose names were given, and added the names of such children as defendants. It also stated that Pepper was willing to surrender, and did thereby surrender, for the purpose of a resale of the said real estate, any title in fee simple which he might have thereto by reason of the deed to him from Philip and Johnston, trustees; and that, for the purpose of reselling such real estate, he waived any interest, claim, or title vested in him by that deed, and offered to make any conveyance which the court might deem proper or necessary to accomplish the purpose indicated.

The bill and amendments were answered by Davis, Fitch

and Barker, and the amendments were answered by Cross, Bacon, Bradley and Mrs. Gray. The answer of Mrs. Gray alleged that it was not in the power of Pepper to make or carry out the offer contained in the amendments; that, if any title passed to him by the sale and the deed to him by Philip and Johnston, he had no right to bring this suit; and that if, on the contrary, no title passed to him by the sale, the offer contained in the amendments was a vain and useless form.

Shepherd also answered the amendments, alleging that the proposed offer by Pepper was no actual surrender of any interest or waiver of any right.

The order *pro confesso* as to Mattingly having been vacated, he put in a plea, setting up the sale and the deed to Pepper, the filing of the bill by Shepherd and of the cross-bill by Pepper, and the decree of October 30, 1880, and averring that Pepper, ever since the deed to him, had claimed to be the owner of the property in fee simple, and still so claimed.

The bill was taken as confessed against the wife of Shepherd; a guardian *ad litem* was appointed for the infant children of Philip, who put in an answer to the bill; Johnston and Bartlett also answered it and the amendments; issue was joined as to all the defendants who had answered; and the plea of Mattingly was ordered to stand as his answer.

Proofs were taken on both sides, the cause was heard by the court in special term, and afterwards, on the 24th of March, 1885, Shepherd presented to the court two petitions, wherein he set forth the bringing of a suit at law against him by Pepper, on the 20th of May, 1882, upon the promissory notes; that at the hearing he learned for the first time that Pepper claimed a personal decree against him, under the prayer in the bill for general relief; that, when the claim to such personal decree was made at the hearing, his personal liability upon the notes was barred by the statute of limitations, because the notes were all of them then more than three years overdue; and that he ought to be allowed to interpose that objection to a personal decree. He therefore prayed for a hearing on the subject of the right of Pepper to a personal decree against him, and to be allowed to take proof as to the

fact of the pendency of the action at law; that the plaintiff might be required to elect between the pending action at law and his claim for a personal decree for a deficiency; that, if he elected to claim such personal decree, he might be required by amendment to make his bill a bill for that purpose, and Shepherd be allowed to answer or plead to it; that Shepherd be allowed a rehearing on the questions as to the disposition of the funds in the hands of the receiver, and as to interest upon the coupon notes; and that he be allowed to interpose by plea or answer the defence of the statute of limitations to a claim for a personal decree. These petitions were dismissed by the court.

On the 26th of March, 1885, the court in special term made a decree, that unless Shepherd should pay to Pepper, on or before the 1st of July, 1885, $35,000, with interest thereon at the rate of nine per cent per annum from the 1st day of June, 1879, until paid, and the further sum of $9450, being the amount of six coupon notes, all dated June 1, 1874, signed by Shepherd, and representing six semi-annual instalments of interest due by him on the principal sum of $35,000, with interest upon them at the rate of six per cent per annum until paid, namely, upon six sums of $1575 each, one from December 1, 1876, one from June 1, 1877, one from December 1, 1877, one from June 1, 1878, one from December 1, 1878, and one from June 1, 1879, and also the sum of $10,000 due to Pepper, with interest thereon at the rate of nine per cent per annum from March 22, 1880, until paid, and the further sum of $3150, being the amount of seven coupon notes, all dated March 22, 1875, signed by Shepherd and representing seven semi-annual instalments of interest due by him on the principal sum of $10,000, with interest on them at the rate of six per cent per annum until paid, namely, upon seven sums of $450 each, one from March 22, 1877, one from September 22, 1877, one from March 22, 1878, one from September 22, 1878, one from March 22, 1879, one from September 22, 1879, and one from March 22, 1880, and also the taxed costs of the suit, lot 3 in Shepherd's subdivision of square 164, with the buildings and improvements thereon, be sold at public auction, by Henry W.

Garnett and John F. Hanna, as trustees. The decree prescribed what notice of sale was to be given and the terms of sale, and directed the proceeds to be brought into court. It also provided that the trustees, before July 1, 1885, should examine witnesses before the auditor of the court, to ascertain the relative values of the real estate covered by the first two deeds of trust, with the buildings and improvements thereon, and of the part described as sub-lot A in square 164, being the rear 28 feet 2½ inches of lot 3, with the buildings and improvements upon such sub-lot A; that, notwithstanding such inquiry, the sale should proceed; that the net proceeds of the sale which should appear to represent the value of that part of the real estate described in the first two deeds of trust, with the buildings and improvements thereon, after deducting therefrom the aliquot parts of the costs, commissions, expenses and charges of the suit chargeable against such part, should be applied toward the payment of the claims of Pepper, and the residue of such net proceeds should be applied toward the claims of Mrs. Gray; that, if the net proceeds of the property described in the first two deeds of trust should exceed the amount of the claims of Pepper, the excess should be applied towards paying the claims of Mrs. Gray, if the same should remain unsatisfied after applying the net proceeds of sub-lot A; that the net amount of rents in the hands of the receiver, after deducting costs, commissions, expenses and repairs, should be applied to the payment of the taxes theretofore paid by Pepper and the insurance premiums properly paid by him, and to the payment of taxes due and unpaid, and the residue of the receipts from rents should await the further order of the court; and that, if the net proceeds of the sale applicable to the claims of Pepper should prove insufficient to discharge them, he should recover from Shepherd whatever amount might remain due of the claims so decreed to be due by Shepherd to Pepper, after the application thereto of the net proceeds of sale, and should have execution therefor as at law.

Shepherd, Bartlett, Bacon and Cross appealed to the general term from this decree; Mrs. Gray appealed from so much of it as directed the sale of sub-lot A; and Pepper also appealed from it.

The court in general term, on the 29th of October, 1885, affirmed the decree of the special term of March 26, 1885, with these modifications: It directed that the inquiry as to the relative values of the two parcels of property should take place after the sale had been made; that, if the debt due to Mrs. Gray should be satisfied otherwise than by applying thereto her proper share of the proceeds of the sale, the entire proceeds of the sale of lot 3 should be applied to the payment of Pepper's debt and interest, or if the proportion of such proceeds set apart by the decree to satisfy Mrs. Gray's debt should more than suffice to satisfy it, then any surplus of such proceeds should be paid over to Pepper on account of his debt and interest; and that the balance of rents remaining in the receiver's hands, after deducting the payments to be made out of such rents as specified in the decree, and after paying interest to Pepper on the sums advanced by him for taxes and insurance premiums, should be paid by the receiver to Pepper on account of any balance of principal and interest, as decreed, that should remain due after applying the proceeds of lot 3, as directed by the decree to be apportioned and applied. It also affirmed the orders dismissing the two petitions filed by Shepherd on the 24th of March, 1885, and charged Shepherd with the costs of the appeal.

Shepherd, Cross, Bacon, Bartlett and Mrs. Gray appealed in open court to this court, from the decree of October 29, 1885, the appeal was allowed, and the amount of the supersedeas bond on behalf of the defendants other than Mrs. Gray was fixed at $1000, and that on her behalf at $100. The appeal of Pepper was abandoned. The defendants other than Mrs. Gray gave the bond required of them. Mrs. Gray did not give the necessary bond; and, although the record was filed in this court on the 9th of October, 1886, she took no action to perfect her appeal to this court until the case came on for hearing, on the 26th of November, 1889, when she offered to the court to be filed a proper bond in the sum of $100. No citation was necessary on her appeal, as she had taken it in open court, the record had been duly filed in this court, on October 9, 1886, and, under the circumstances, we will permit the bond

on behalf of Mrs. Gray to be filed *nunc pro tunc* as of the 26th of November, 1889, and her appeal to stand as perfected.

At the time the loans were made by Pepper to Shepherd, Shepherd claimed to own and agreed to give as security therefor, the land and improvements situated at the northeast corner of Connecticut Avenue and K Street, fronting 43 feet 9 inches on K Street, and 109 feet ½ inch on Connecticut Avenue, containing 8466.22 square feet, known as lot No. 3 in Shepherd's subdivision of lots in square No. 164. The improvements covered nearly the whole of that lot, the portion not so covered being enclosed and used in connection with the house. It was the intention of both Pepper and Shepherd that the whole of this property should be included in the deeds of trust; and if Pepper had any knowledge, information or suspicion to the contrary, he would not have loaned any of the money. Shepherd testifies that when he executed the deeds of trust, he supposed that they embraced the whole property. On the piece of land known as sub-lot A, being that part of lot 3 which fronts 28 feet 2½ inches on Connecticut Avenue, and has such a depth that it contains 3656 square feet, there had been actually constructed at the time a portion of the dwelling-house, which includes the coal-vaults, the laundry, the servants' apartments, and a portion of the picture gallery.

It is not denied by Shepherd that the debts due by him to Pepper are *bona fide* debts, and are overdue; and their existence and amounts are satisfactorily proved. The sole defence of Shepherd amounts to this, that by the uncertainty and delay of the law, and by mistakes in the legal proceedings, Pepper has lost all right to the execution of the trusts created for his benefit; and it is urged that, by reason of the proceedings in the prior suit brought by Pepper, he is estopped from maintaining the present bill.

The opinion of the court in general term, delivered by Mr. Justice Merrick, is reported in 4 Mackey, 269. It states that when the decree of May 12, 1879, in the suit brought by Pepper, came to be made, there was by inadvertence an error in the description of the property in the decree, by leaving a blank in the designation of the trust deed, the result of which was

that the decree was uncertain in itself and practically void on account of the uncertainty in its description of the property. As Bradley was trustee in each of the first two deeds of trust, and as the decree appointed Johnston to be trustee in the place and stead of Bradley in but one deed of trust, which was so described that it could not be identified, the whole transaction became uncertain and void. It resulted from this, as the opinion states, that there was no effective appointment of a trustee, and no effective sale; and the bill in the suit brought by Shepherd was dismissed on the ground that there was no cloud upon the title, because the sale itself was a nullity. The opinion further states that, while Shepherd averred in his answer that the sale to Pepper was a nullity and passed no title, and Mrs. Gray by her answer averred the same thing, they were now taking the ground that Pepper had no right to have a second sale of the property, because, having bought under the first sale, he must abide thereby; in other words, that, although he acquired no title under the first sale, he is estopped by that sale, from having it sold again. The opinion adds, that this is a defence which a court of equity cannot entertain. It also considers the point taken by Mrs. Gray, that, inasmuch as she is the first encumbrancer on sub-lot A, Pepper cannot have the whole property sold without first discharging her entire claim, and says that the two pieces of property had been held in a general ownership; that the testimony showed that to sever them would be destructive of the value of both; that although Pepper had not brought home to the knowledge of Mrs. Gray the equitable mortgage as between him and Shepherd, yet the fact of the building being upon the two lots, and the further fact that, if there is to be a sale, the whole property ought to be sold together, because the value of both would be decreased if they were sold separately, constituted a case where a court of equity ought to order all the property to be sold together; that it would be inequitable to compel Pepper to redeem the whole of the debt to Mrs. Gray as a condition of the sale of sub-lot A, because Mrs. Gray is entitled to only an inconsiderable portion of the encumbered premises, except in subordination to the claims under the first

two trust deeds; and that the decree of the special term, in giving to Mrs. Gray such portion of the proceeds of sale as should be determined to be the value of her interest in sub-lot A, upon testimony as to the relative values of the two properties, gave to her all that she was entitled to in equity. As to the rents and profits, the opinion said that wherever property subject to a lien has been brought within the domain of a court of equity, and a receiver of it is appointed, the rents and profits in the hands of the receiver will be applied, along with the corpus of the fund, to satisfy the lien, after paying charges such as taxes and insurance; that the special term properly directed the application of the rents to pay off premiums of insurance and taxes which had accrued; but that the decree ought to be modified by directing that the residue of the rents should go to make up any deficiency in the proceeds of the sale of the two properties to satisfy the corpus of the debts, recognizing the right of Mrs. Gray to her share of the proceeds of sale according to the apportionment before indicated, but dedicating the rents primarily to the satisfaction of the debts due to Pepper, together with the proceeds of the sale of the primary property upon which the house is built. We concur in these views of the general term.

The bill in the first suit brought by Pepper was a bill merely to substitute a trustee in the place of the trustees in the first two deeds of trust. The prayer of the bill was that such trustee be appointed, with directions and authority forthwith to execute all the trusts reposed by the first two deeds of trust in the trustees mentioned therein. It does not pray that an officer of the court shall make the sale, or that the trustee to be appointed by the court shall make the sale under any power to be given to him by the court; but it prays that he may execute the trusts under the deeds of trust. Moreover, the decree of May 12, 1879, declares that it is made "without prejudice to all other rights of defendant." This reserved the right of Shepherd to be heard on the question of the right of Pepper to foreclose under the deeds of trust. The present suit is a suit for foreclosure, and in it all defences to the claims of Pepper were open to be made by Shepherd. In respect of

parties, in respect of subject matter and in respect of the relief prayed for, the two bills brought by Pepper are different; and none of the questions involved in the pleadings in the present suit were involved in or adjudicated in the first suit brought by Pepper. Still further, the uncertainty and inoperative character of the decree of May 12, 1879, make the whole suit fruitless and of no more effect than if it had never been commenced.

For the same reason, Pepper cannot be regarded as having made any election, in the first suit brought by him, to enforce a sale of the property described in the first two deeds of trust aside from a sale with it of sub-lot A, so as to be estopped from now asserting a lien upon sub-lot A. When the first bill was filed by Pepper, he knew that Shepherd had merely a tax title to sub-lot A; and Shepherd, in his answer to that bill, averred that the title to sub-lot A never belonged to him, and that he theretofore purchased what is called a tax title to sub-lot A, but it turned out to be void and of no effect. Therefore, Pepper could not at that time have attempted to reform the first two deeds of trust so as to include sub-lot A, because Shepherd then had no title to that sub-lot. But the fact that both Pepper and Shepherd agree that it was intended by them that the first two deeds of trust should include sub-lot A, gave Pepper a right to assert an equitable mortgage against that sub-lot; so that afterwards, when Shepherd bought in the proprietary title to it, as the evidence shows he did, Pepper was for the first time in a position to assert a lien against it.

It is, we think, very plain that Pepper acquired no title by the deed to him under the sale by the trustees, and that the decree dismissing the bill filed by Shepherd had no effect to establish any legal title in Pepper to the real estate in question. Even if resort may not be had to the opinion of Mr. Justice James, still it is manifest that the propositions stated in that opinion are sound, namely, that if the decree of May 12, 1879, was uncertain on its face, in the respects and to the extent before mentioned, the alleged title of Pepper, through the deed from the trustees to him, was not a cloud upon the title of Shepherd, and therefore the court could not grant

Shepherd the relief he prayed for in the bill filed by him, and that bill was properly dismissed.

This view of the case is taken by Pepper, in his bill in the present suit, because he says therein, in regard to the decree of May 12, 1879, and the opinion of Mr. Justice James, "that, as it appears by the said opinion of the court that the said decree did not give to the said Johnston any power to sell, said decree was in effect, an adjudication upon and favorable to the averments in said Shepherd's bill of complaint in said court that said sale was made without authority and the deed of said Philip and Johnston was null and void, and, as the said Shepherd has always averred and insisted that said decree was void and said sale a nullity, and to the end that said lot 3 of said Shepherd's subdivision may be sold as a whole, the complainant files this bill in order that an undisputed title to the whole property may be obtained by means of foreclosure proceedings under the order and decree of this court." Then the bill prays accordingly, "that a trustee or trustees may be appointed by this court to sell the whole of lot 3, in A. R. Shepherd's subdivision of square numbered 164, with the improvements thereon." Therefore, it is not true that Pepper is still asserting a legal title in himself.

We think that Pepper is entitled to have the whole of lot 3 sold. It was omitted at least by accident from the first two trust deeds, when both parties supposed they covered it. Lot 3 embraces not only sub-lot A, but the property covered by the first two deeds of trust. Shepherd, in his answer to the first bill filed by Pepper, said, "that, in his opinion, it would be impossible to make a sale and division of the said property, under the said deed of trust without irreparable injury to, if not total destruction of, a large portion of the dwelling-house which is erected upon the said lot; . . . that the said dwelling-house would be entirely incomplete without the addition of that portion called the 'picture-gallery;' that the servants' apartments and the laundry and drying-room, etc., etc., are underneath the said portion of said dwelling-house, as well as the heating apparatus for a large portion of the house; and that, if the said lot A, which is not included in the deed of

trust of the said complainant, shall be separated from that portion which is included in the said deed of trust to the complainant, a dividing line would not only take off the said 'picture-gallery,' but would take off and destroy a portion of the back part of the main dwelling-house."

In regard to Mrs. Gray, the letter to her, written by Mr. Brown, of the firm of Fitch, Fox & Brown, who were negotiating for her the loan to Shepherd, the letter being dated April 18, 1876, speaks of the loan as one "to be secured by a second mortgage, the prior mortgage being for $45,000." Besides this, the first two deeds of trust were recorded respectively June 3, 1874, and March 24, 1875, and they conveyed, to secure Pepper, the premises described in them, "together with all the improvements, ways, easements, rights, privileges, and appurtenances to the same belonging or in anywise appertaining, and all the estate, right, title, interest and claim, whatsoever, whether at law or in equity, of the said parties of the first part, of, in, to, or out of the said piece or parcel of land and premises." The improvements and easements in question were visibly necessary for the dwelling-house as then constructed, and were visibly upon, or required the use of, sub-lot A, as stated by Shepherd, as before recited.

Mrs. Gray is only a mortgagee, and not the owner in fee, of sub-lot A; and her interest in the property is subject to the prior and subsequent interests of other parties, as those interests are usually ascertained and administered by a court of equity for the benefit of all concerned. It is not equitable that she should be allowed to use her mortgage on sub-lot A to prevent a sale of the entire lot 3. Her only right can be to have the proceeds of sub-lot A applied first to the payment of her debt; and that right is secured by the decree appealed from.

The present bill is one to obtain a decree for the sale of encumbered premises and the application of the proceeds of sale to discharge the encumbrances according to priority. The debts to Pepper and to Mrs. Gray are overdue; and under such circumstances a court of equity, on the application of a junior encumbrancer, will provide for the sale of the entire

encumbered property, if the circumstances of the case show that the interests of the mortgagor and of the encumbrancers require the sale. *Finley* v. *Bank of the United States*, 11 Wheat. 304, 306; *Hagan* v. *Walker*, 14 How. 29, 37, 38; *Jerome* v. *McCarter*, 94 U. S. 734, 735, 736, 740; *Hill* v. *National Bank*, 97 U. S. 450, 453, 454; *Woodworth* v. *Blair*, 112 U. S. 8; *Hefner* v. *Northwestern Life Ins. Co.*, 124 U. S. 747, 754; *Vanderkemp* v. *Shelton*, 11 Paige, 28. This authority is properly exercised in the case of deeds of trust, where all the encumbrances are due and where the plaintiff has a first lien on some of the property sought to be sold, and where all the encumbrancers are parties to the suit. Here, Pepper has a first lien on the bulk of the property sought to be sold, and a second lien, as decreed, on the small remaining portion; and the debts secured by the first two deeds of trust were all overdue when the bill in this case was filed, as well as the debt due to Mrs. Gray. Under such circumstances, the mere non-assent of Mrs. Gray ought not to prevent the court from doing what is equitable in regard to the claims of Pepper, as well as those of herself.

There was no error in the dismissal of the two petitions of Shepherd, filed in March, 1885, nor in entering a personal decree against him for any deficiency which should remain after exhausting the property covered by the deeds of trust.

The fact of the bringing of the suit at law upon the notes, by Pepper against Shepherd, in April, 1880, was set up in the answer of Bradley to the bill in the present suit, and was therefore in issue; but it was not shown in defence that Shepherd had ever been served with process in any such suit at law, or had appeared in it, voluntarily or otherwise. Moreover, the principal notes given to Pepper were not barred by limitation when the bill in this case was filed. As to the interest notes or coupons, although some of the unpaid ones for each of such two principal notes had been overdue more than three years when the bill was filed, yet it makes a claim to recover all the interest, and Shepherd does not, in his answer, set up the statute of limitation as a bar to any part of the principal or interest claimed.

The bill in this suit prays for general relief, and a decree

for a deficiency is a necessary incident of a foreclosure suit in equity. It is provided as follows by section 808 of the Revised Statutes relating to the District of Columbia: "The proceeding to enforce any lien shall be by bill or petition in equity, and the decree, besides subjecting the thing upon which the lien has attached to the satisfaction of the plaintiff's demand against the defendant, shall adjudge that the plaintiff recover his demand against the defendant, and that he may have execution thereof as at law." This provision was interpreted by this court in the case of *Dodge* v. *Freedman's Savings and Trust Co.*, 106 U. S. 445, where it was held that it authorized a decree *in personam* against the debtor for the balance remaining due after the proceeds of the sale of lands covered by a mortgage or a deed of trust in the nature thereof had been applied to the satisfaction of the debt. The present cause is of the same character of foreclosure proceeding as that involved in the case cited. It was proper for the court, under the bill as it stands and the statute on the subject, to make a personal decree against Shepherd for a deficiency; and the matter of granting the prayers of his petitions filed in March, 1885, was a question of discretion in the court below, and not reviewable.

As to the question of the disposition of the rents in the hands of the receiver we think the action of the court below was proper. The pecuniary condition of Shepherd, his failure to pay taxes, premiums of insurance, or interest, the inadequacy of the property to pay the claims of Pepper and Mrs. Gray, and the diversion of the income from rents, from making such payments, to the use of Shepherd, up to the time of the appointment of the receiver, were adequate grounds for the appointment of the receiver. *Kountze* v. *Omaha Hotel Co.*, 107 U. S. 378, 395 ; *Grant* v. *Insurance Co.*, 121 U. S. 105. The court, through its receiver, took possession of the rents in order to preserve them for that party to the suit who should ultimately be found to be equitably entitled to them. *Hitz* v. *Jenks*, 123 U. S. 297, 306. The various reports of the receiver contained in the record, as to his payment of taxes, premiums of insurance and the expenses of repairs on the

building, show the necessity of his appointment. It would be grossly unjust, on the facts developed in this case, to appropriate the rents in the hands of the receiver to the use of Shepherd.

It is contended on behalf of Shepherd that the decree appealed from is erroneous, because it allows interest at the rate of nine per centum per annum on the principal of the notes, from June 1, 1879, and March 22, 1880, respectively, until paid; and it is urged that the interest should have been fixed at the rate of six per cent, from the date of the decree, March 26, 1885, on the ground that that was the rate of interest fixed by the statute on judgments and decrees.

Section 713 of the Revised Statutes relating to the District of Columbia provides as follows: "The rate of interest upon judgments or decrees, and upon the loan or forbearance of any money, goods or things in actions, shall continue to be six dollars upon one hundred dollars for one year, and after that rate for a greater or less sum, or for a longer or shorter time, except as provided in this chapter." Section 829 of said Revised Statutes provides as follows: "Upon all judgments rendered on the common law side of the court in actions founded on contracts, interest at the rate of six per centum per annum shall be awarded on the principal sum due until the judgment shall be satisfied, and the amount which is to bear interest and the time from which it is to be paid shall be ascertained by the verdict of the jury sworn in the cause." Section 714 authorizes parties to contract in writing for the payment of interest at the rate of 10 per cent per annum.

It is urged that the decree is a decree which fixes the amount of each of the debts due by Shepherd, and says that those sums are "hereby decreed to be due and payable" by Shepherd, to Pepper, with interest, etc. ; that this is the language of a judgment ; and that almost the same language is employed in reference to the accrued interest. The decree provides that, if the net proceeds of the sale shall prove insufficient to discharge the claims of Pepper, he shall have and recover of Shepherd whatever amount may remain due of the claims decreed to be due by Shepherd to him, after the ap

plication thereto of the net proceeds of sale, and shall have execution therefor as at law. It is contended, therefore, that, as the decree ascertained the amount of the debt still due, and fixed the rate of interest on it, it thereafter drew interest by virtue of the decree, and not by virtue of the terms of the contract, because the contract was merged in the decree.

We think, however, that on the face of the decree the court did not intend to, and did not, merge the contract in the decree; but merely fixed the amount due according to the terms of the contract on the payment of which, before the day fixed, the decree would not go into effect; but the case would be dismissed. The statute has no application, except as to the rate of interest charged on the deficiency which shall be found to exist after applying the net proceeds of sale to the debt, and the decree does not provide for interest in excess of six per cent per annum on such deficiency.

In regard to allowing interest on the principal of the notes at the rate of nine per cent per annum until paid, it is to be said that such was the contract in each note.

It was stated at the bar that Hanna, one of the trustees appointed by the decree of the special term to make the sale, had died: If so, the court below will have power to appoint a new one in his place.

The decree in general term is, therefore,

*Affirmed.*

MR. JUSTICE MILLER, dissenting:

I dissent from so much of the judgment of the court in this case as requires the entire property to be sold together and make provision afterwards for dividing the proceeds according to the valuation that may be made to ascertain how much of the money should go to appellant, Maria Gray.

I am of opinion that she has a right to have the piece of ground, on which her mortgage is declared to be the first lien, sold separately, so that she can bid whatever sum she may see proper in satisfaction of her mortgage. If this sum should be more than would satisfy the mortgage, of course the excess would go to the satisfaction of Pepper's debt. If it should

sell for less, then Pepper has no interest in it, and I see no reason why she should be compelled to compete with Pepper or anybody else in purchasing the entire property, which is worth four or five times as much as her single piece is worth, in order to make that piece bring its full value on the sale.