**B. G. CARBAJAL, Inc., v. ENOCHS.**
**No. 7092.**

Circuit Court of Appeals, Fifth Circuit.
Jan. 6, 1934.

Rehearing Denied Feb. 7, 1934.

Delvaille H. Theard and Frank P. Kreiger, both of New Orleans, La., for appellant.

J. Blanc Monroe, Monte M. Lemann, and Nicholas Callan, all of New Orleans, La., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from an interlocutory decree appointing a receiver pursuant to the prayer of a bill in equity filed July 17, 1933, for the foreclosure of a deed of trust or mortgage made by the appellant, a Louisiana corporation, covering sundry parcels of real estate in the city of New Orleans, including the Marbere Hotel, to secure the principal and interest of bonds, having serial maturities, issued by the appellant, and a chattel mortgage covering described movable property contained in the Marbere Hotel, made by the appellant to subject that movable property to the lien of the first mentioned mortgage; the mortgages covering also the income and profits from the mortgaged properties. The bill contained allegations as to the appointment, on July 14, 1933, of appellee as trustee under the mortgage as successor of the Canal Bank & Trust Company, the original trustee named therein, after the latter had become incapable of acting as trustee, as to defaults under the mortgage by the failure of the mortgagor to pay principal and interest of the secured bonds when due, and to pay taxes on the mortgaged property when due, as to the appellee, after the happening of the above-mentioned defaults, and after having received a written request to do so from the holders of more than 50 per cent. in amount of the secured bonds then outstanding, declaring all the secured bonds to be due and payable immediately, and demanding the immediate payment thereof, as to the appellant having no adequate remedy at law, and as to the necessity, pending the suit, for the appointment of a receiver of the mortgaged properties for the protection of the rights of the bondholders, the bill alleging that the "property covered by the mortgage above referred to comprises a hotel

and office building properties in the City of New Orleans the value of which can be conserved only by continued operation." The bill contained a prayer that pending the suit a receiver be appointed of the mortgaged properties and of the earnings, income, rents, issues, and profits thereof. By its return to an order of the court, made on the day the bill was filed, that the appellant show cause why a receiver should not be appointed as prayed for in the bill, the appellant set up that, prior to the date of the filing of the bill, the bondholders through their agent, the Whitney National Bank, with the full acquiescence and consent of appellant, through its agent and representatives, assumed control of the said hotel, and operated and managed the same as a going concern, and were actually doing so at the time of the institution of this suit, and had continued to do so up to the time of the making of such return, for the use and benefit of said bondholders; that no one has ever requested the appellant to surrender to the bondholders the care and administration of the other real estate subject to the mortgage sought to be foreclosed, but that appellant was willing either to turn over the administration of said real estate to said bondholders, or to their designated representative, or to turn over all gross receipts and rents as received from said real estate to the representative of said bondholders up to the termination of the present litigation; and "that the bondholders, therefore, already have, or are in a position to have, amicably and without the expense, formalities and delays incident to the appointment of a receiver, complete administration and control of the properties subject to the mortgage, and are actually receiving all the benefits and avails thereof."

The evidence adduced in the hearing on the order to show cause and the return thereto consisted of affidavits filed by the appellant and by the appellee. Those affidavits showed the following: In September, 1932, by agreement between appellant and the Canal Bank & Trust Company, the original trustee named in the mortgage (which agreement so far as appears was subject to be revoked at any time), J. J. Monaghan, as manager, was put in possession and control of the Marbere Hotel, collecting all receipts and making all disbursements, and depositing all receipts in the Canal Bank & Trust Company, the original trustee. After the formation of a committee of bondholders under a protective agreement entered into on April 25, 1933, and after the original trustee, the Canal Bank & Trust Company, on or about May 20, 1933,

became incapable of further acting as trustee, Monaghan, as manager, remained in possession and control of the Marbere Hotel and deposited receipts in the Whitney National Bank, which, under the above-mentioned agreement, was the depositary of bonds and coupons. That bank was not the agent of the bondholders with reference to the possession or control of any of the mortgaged properties. The evidence did not show that the appellee or the bondholders' committee was a party to any agreement as to the possession and control of the hotel. It did not show that appellant consented to rents and income from the mortgaged properties collected during the pendency of the suit being subject to the control of the court or to be applied, under orders of the court, to the payment of taxes on the mortgaged property which were in default. Prior to the institution of the suit, the bondholders' committee, through its secretary, requested the appellant to turn over to the trustee or to a representative of the bondholders all rentals collected from the mortgaged property. That request was not complied with. At the time of the hearing, collections from rentals of mortgaged properties other than the Marbere Hotel exceeded $1,000 a month.

The appointment of a receiver in a mortgage foreclosure suit to take possession of the mortgaged property pending the suit is a matter resting largely in the discretion of the court, which is under a duty to inquire whether, under all the circumstances, considering the interests of the parties and the public, it is wise and proper to take possession of the property. The facts that the mortgage covers property the value of which may be impaired if it is not continued in operation pending the suit, and that the mortgagee's interest is endangered by defaults in the payment of taxes on the mortgaged properties, are circumstances having a bearing on the exercise by the court of its discretion in passing on the question whether it is or is not proper for the court to take into its custody and control pending the suit the mortgaged properties and the rents and income therefrom, to the end that, under orders of the court, the mortgaged properties be conserved while the suit is pending and until the arrival of the time which the court deems appropriate for a foreclosure sale, and that the income therefrom be applicable to the payment under orders of the court of taxes on the mortgaged properties, and for other lawful purposes. Bosworth v. Terminal Railroad Association, 174 U. S. 182, 186, 19 S. Ct.

625, 43 L. Ed. 941; Shepherd v. Pepper, 133 U. S. 626, 652, 10 S. Ct. 438, 33 L. Ed. 706; Appleton Waterworks Co. v. Central Trust Co. (C. C. A.) 93 F. 286; Cassedy v. Strauch, 61 App. D. C. 21, 56 F.(2d), 493; 19 R. C. L. 563. On the state of facts disclosed in the hearing on the notice to show cause and the return thereto, we think there was no abuse of its discretion by the court in appointing a receiver, notwithstanding the objections to that action on the grounds stated in the return. It is to be assumed, in the absence of any showing to the contrary, that the expenses of the receivership will not be more than are reasonably necessary and proper under all the circumstances proper to be considered by the court in reaching its conclusions on that subject.

▮ The decree appealed from is challenged on grounds, now to be mentioned, which were not urged in the court below. One of those grounds is the asserted failure of the bill to show that the bonds secured by the mortgage sought to be foreclosed had become due and payable by a compliance with the condition prescribed in the following provision of the mortgage: "If any one or more of the events of default hereinabove named shall happen, then and in each and every case the Trustee may and upon the written request of the holders of twenty-five per cent or more in amount of the bonds then outstanding, and upon being indemnified to its satisfaction, shall by notice in writing delivered to said company or deposited in the mails addressed to said company, declare the principal of all bonds secured hereby and then outstanding to be due and payable immediately, and upon such declaration the principal shall become due immediately. Anything in this act of mortgage or said bonds or coupons to the contrary notwithstanding. * * * " The bill, after alleging the happening of the above-mentioned defaults, alleged: "The above events of default having happened, petitioner, having received a written request from the holders of more than 50% of the amounts then outstanding so to do, did on the 14th day of July, 1933, declare the principal of all of said First Mortgage 5½% Gold Bonds of said B. G. Carbajal, Inc., to be due and payable immediately and demanded immediate payment thereof as will more fully appear by reference to a copy of said declaration and demand filed herewith marked Exhibit 'E,' the original of which was delivered to said B. G. Carbajal, Inc., on July 17, 1933." Exhibit E so referred to, which was filed with the bill of complaint, is a written instrument, dated July 14, 1933,

signed by the appellee as successor trustee, and addressed to the appellant. That instrument, after reciting the happening of the above-mentioned defaults, concludes with the statement that "the undersigned as Successor Trustee * * * does hereby declare the principal of the said First Mortgage 5½% Serial Gold Bonds, dated as of September 1, 1927, secured by said Deed of Trust and Mortgage and Chattel Mortgage and now outstanding to be due and payable immediately. Demand is now made for the immediate payment of all of said bonds in principal and interest as well as for the payment of all taxes now delinquent and all interest and penalties thereon and the performance of all other covenants and conditions contained in said Deed of Trust and Mortgage and Chattel Mortgage." The reference in the allegation in the body of the bill to the exhibit which was filed with the bill had the effect of making what was contained in the exhibit a part of the pleading. Nauvoo v. Ritter, 97 U. S. 389, 24 L. Ed. 1050; Everglades Drainage League v. Napoleon B. Broward D. Dist. (D. C.) 253 F. 246. That the bonds secured by the mortgage had become due and payable in the way prescribed in the mortgage was sufficiently shown by allegations of the bill.

▮ The decree appealed from is attacked also on the ground that the appointment of the appellee as successor trustee under the mortgage was invalid. It appeared from allegations of the bill that appellee was appointed successor trustee by individuals who, by the above-mentioned protective agreement, were made the authorized attorneys in fact of the holders of a majority in amount of the outstanding bonds issued under the mortgage, to which agreement a majority in amount of such bondholders became parties by depositing their bonds with the named depositary as provided in that agreement. The asserted invalidity of the appointment of the appellee as successor trustee is based upon the fact that the protective agreement contained the following provision: "No bonds and/or coupons may be deposited with the said Depositary on or after the 25th day of May, 1933, unless the said Committee in its uncontrolled discretion should allow further time for the deposit of such bonds and/or coupons, in which event it may fix such terms and conditions as it may deem proper as a condition for the allowing of same to be thus deposited after said date, and shall notify the Depositary in writing of such extension of time and of such terms and conditions. No other or further formality shall be required." For the appellant it was contended that the just

quoted provision was violative of the Louisiana statute (Louisiana, Act No. 72 of 1914) which provides in effect that the interest in the mortgaged property of the holders of the respective bonds secured by such a mortgage as the one sued on shall be in common and indivisible, and that, in case of the enforcement of the mortgage by seizure and sale of the mortgaged property or otherwise, the holders of such bonds shall be entitled to participate pro rata in the proceeds of the mortgaged premises; and that the quoted provision is also violative of the provisions of the mortgage sued on to the same effect as the just mentioned statutory provision. By the protective agreement, to which the holders of more than 50 per cent. of the amounts of the secured bonds then outstanding became parties, a committee was appointed, which was vested with the power to represent, bind, and act for the depositors in respect to said bonds and coupons in all matters in connection therewith as completely and effectively as though the committee were the absolute owners of the deposited bonds and coupons, and to act for the depositors in protecting their interests in the foreclosure proceedings and in the sale of the mortgaged properties under a foreclosure decree, the committee being authorized to buy the mortgaged property at such sale for the parties to the agreement if the committee should deem it desirable to do so. The protective agreement contains nothing indicating that the committee created by it was authorized to do anything violative of the rights under the mortgage of any holder of bonds or coupons secured thereby. By virtue of his appointment as successor trustee, the appellee became trustee for all the holders of bonds and coupons secured by the mortgage, including those who did not become parties to the protective agreement, and the bill filed was in behalf of all such holders, nothing in that bill indicating that it was contemplated that any holder of an outstanding bond or coupon would be deprived of the right to receive his pro rata share of the proceeds of a foreclosure sale of the mortgaged properties. So far as appeared, there was no abuse by the committee of the discretion given it in the matter of allowing further time for the deposit of bonds or coupons and the provision limiting the time for the deposit of bonds or coupons, unless in its discretion the committee should allow further time, did not have the effect of keeping any holder of bonds or coupons who desired to do so from becoming a party to the protective agreement. Nothing in the statute above referred to or in the mortgage sued on is inconsistent with the right of a majority or less than a majority of the holders of bonds secured by a mortgage to form a committee for the protection of their rights, when the agreement resulting in the existence of such a committee does not purport to, and does not have, the effect of impairing any right possessed by the mortgagor or by any holder of a secured bond or coupon who did not become a party to that agreement. Assuming, without deciding, that the appellant, the mortgagor, was entitled to have the appointment of the appellee as successor trustee adjudged invalid on a ground available to that end in favor of any holder of secured bonds or coupons, we are of opinion that that right did not exist because of the absence of any showing that such appointment had or was intended to have, the effect of defrauding, or impairing any right of, the appellant or of any holder of a secured bond or coupon. In the circumstances disclosed, the appointment of appellee as successor trustee was not invalid on the ground now under consideration. Bound v. South Carolina R. Co. (C. C. A.) 78 F. 49, 55; Tracy on Corporate Foreclosures, §§ 12, 15.

We conclude that the decree under review was not erroneous. That decree is affirmed.