## PHILADELPHIA MORTGAGE & TRUST CO. v. NEEDHAM et al.

### (Circuit Court, D. Nebraska. January 7, 1896.)

**1. MORTGAGES—FORECLOSURE—SALE IN INVERSE ORDER OF ALIENATION.**
The rule as to sale of mortgaged premises under foreclosure, in the inverse order of alienation by the mortgagor, will not be strictly applied where it would work injustice to any of the parties in interest.

**2. SAME—MARSHALING LIENS.**
One S., owning a parcel of land which was subject to a mortgage to the P. Trust Co., divided the northern half of the parcel into three lots, B, C, and D, each of which he mortgaged, separately, to one M. Subsequently he sold lots B and D to other parties, subject to the mortgages to M., but agreeing to pay the mortgage to the trust company. The trust company afterwards brought suit to foreclose its mortgage on the whole parcel, and the owners of lots B and D asked that the southern half

of the parcel and lot C should be sold, before the sale of lots B and D. *Held*, that such procedure, which might result in destroying the se- curity of M.'s mortgage on lot C, would be unjust to M.; and that, in order to preserve the equities of all parties, an appraisement should be had of the lots B, C, and D; that the southern half of the original parcel should be first sold, the costs of suit deducted from the proceeds, and the residue applied on the trust company's mortgage; that the balance due on that mortgage should then be apportioned between lots B, C, and D, according to their appraised value; that lot C should then be sold, and the proceeds applied first to the ascertained proportion of the trust company's mortgage, and then to M.'s mortgage, and the balance, if any, paid into court; that lots D and B should then be sold in the order named, being the inverse order of alienation, and the proceeds dis- posed of as in the case of lot C, the balance being paid to the owners of the lots.

Wharton & Baird, for complainant.

Meikle & Gaines, for defendant Edward A. Mason.

Kennedy & Learned, for defendants Herbert A. Doud and Emma E. Doud.

SHIRAS, District Judge. The question at issue in this case arises upon the following facts: On June 25, 1888, Charles P. Needham and Mary E. Needham executed a mortgage on lot 11 in block 4 in Park Place, an addition to the city of Omaha, to secure the payment of the sum of $3,650, due to the complainant. Shortly after the ex- ecution of the mortgage, Needham and wife sold and conveyed the property to William T. Seaman, subject to the mortgage to complain- ant. On the 12th day of November, 1888, Seaman executed a mort- gage to Edward A. Mason on the east 45 feet of the north 130 feet of lot 11, to secure the payment of the sum of $2,500; and on the same day he executed a mortgage to Edward A. Mason to secure the payment of $3,200 on the west 45 feet of the east 90 feet of the north 130 feet of lot 11; and afterwards, to wit, on December 31, 1888, the said Seaman executed another mortgage to the said Mason upon the west 40 feet of the north 130 feet of lot 11, to secure the payment of the sum of $2,500. It thus appears that the north 130 feet of lot 11 has been in fact divided into three parts, each of which has been separately mortgaged to Edward A. Mason, to secure separate debts or loans. For convenience sake, the south part of lot 11, not mort- gaged to Mason, will be called "A"; the west 45 feet of the north 130 feet will be called "B"; the middle 40 feet will be called "C"; and the east 45 feet will be called "D." It further appears that on September 24, 1889, Seaman sold to Elizabeth Dixon premises B, subject to the mortgages to complainant and Mason, but with an agreement that Seaman should pay the mortgage due complainant. Subsequently, Elizabeth Dixon conveyed premises B to Herbert A. Doud, subject to the Mason mortgage. On February 12, 1890, Seaman sold and con- veyed premises D to L. D. Holmes, subject to the Mason mortgage thereon, but agreeing to pay the mortgage to complainant. It thus appears that the legal title to premises A is now in Seaman, subject to the blanket mortgage held by complainant; that the legal title of premises C is now in Seaman, subject to the blanket mortgage of

complainant and the separate mortgage held thereon by Mason; that the legal title of premises B is now in Herbert A. Doud, subject to complainant's blanket mortgage and the separate mortgage held by Mason thereon; and that the legal title of premises D is now in L. D. Holmes, subject to the complainant's blanket mortgage and the separate mortgage held by Mason thereon.

This proceeding is brought by the complainant for the purpose of foreclosing the mortgage held by it upon the entire premises, known as "lot 11 in block 4 in Park Place"; and the case is now ready for a final decree of foreclosure, the only disputed question being that touching the mode of sale under the facts already stated.

On behalf of the defendants Doud and Holmes, it is claimed that the premises A and C should be first sold, because the title thereto is yet in Seaman, who stands in place of the common grantor and mortgagor; and that the general rule that the subdivisions of the property should be sold in the inverse order of alienation should be followed in this case, it being admitted that the courts of Nebraska adopt that rule in directing sales of mortgaged property. The rule upon this subject in force in the state of Nebraska is the rule to be followed by this court, as is directly held by the supreme court in Orvis v. Powell, 98 U. S. 176. Admitting, then, that, ordinarily, the rule is that, where portions of mortgaged property are subsequently sold by the mortgagor, the order of sale upon a foreclosure of the mortgage will be that of the inverse date of the conveyances to the several purchasers, nevertheless it is true that this general rule will not be literally enforced when to do so would work injustice to any of the parties in interest. Thus, in 2 Jones, Mortg. § 1621, it is said:

"The rule is not, however, applied in any case where its application would work injustice. It is not applied where the mortgage does not rest alike upon the whole of the land, nor does it apply to a sale of the equity of redemption upon execution for a debt other than that secured by the mortgage."

Touching the premises A, the title to which yet remains in Seaman, and upon which rests only the lien of the blanket mortgage held by complainant, it is clear that, equitably, these premises should be first sold, and the net proceeds, after payment of costs, should be applied upon the mortgage debt due complainant.

Upon part of the defendants Doud and Holmes, it is urged that premises C should be next sold, because the title thereto remains in Seaman. If the only parties interested were the complainant, the defendant Seaman, and the defendants Doud and Holmes, this contention would be well founded; but how would this course affect the rights and priority of Mason, who holds a mortgage upon premises C, prior in time to the conveyances to Doud and Holmes? If premises C should be ordered sold next to A, it is clear that an inequitable burden would be cast upon Mason for the benefit of Doud and Holmes. Thus, if premises C should be sold for just enough to pay the balance due complainant, after applying the proceeds realized from the sale of the premises A, then the lien of the complainant's mortgage upon premises B and D would be discharged, thus benefiting Doud and

Holmes, the present owners thereof; but this benefit to them would result in wholly destroying the security held by Mason upon premises C. Unless premises C should sell for enough to pay the balance due complainant and the sum secured to Mason thereon, of which there is no probability, the selling premises C next in order to A would work the greatest injustice to Mason; and there is no principle of law or equity which would justify a court in so ordering a sale of the mortgaged property as to favor Doud and Holmes at the expense of Mason, whose rights and equities, are prior in time to those of the other defendants. If Mason held a blanket mortgage upon the premises B, C, and D, to secure the entire sums due him, a sale of premises C in the manner proposed would cause no injury to him; and the same would be true if the rule of selling in the inverse order of alienation was followed as to the remaining portions of the mortgaged tract. As Mason, however, does not hold a blanket mortgage covering lot 11, but has a separate mortgage on premises B, C, and D, the lien of each being confined to the premises described in each mortgage, it is clear that the enforcement of the rule to sell in the inverse order of alienation would result in defeating the priority to which Mason is justly entitled; and the court is not required to blindly follow the letter of the rule when it is apparent that to do so will result in defeating the spirit of the rule, and in setting aside prior established rights and equities. In cases like the one under consideration, it is within the power of the court to order the entire property to be sold, free from all liens, and to protect the priorities of the parties in interest in the order made for the distribution of the proceeds; or the court may order a sale of the realty in parcels, when that course promises the best results, and may apportion the liens upon the several parcels, as they rightfully and equitably exist, in order that the parties and bidders at the sale may know what burdens rest upon each parcel, and how distribution is to be made of the proceeds of such sales. Shepherd v. Pepper, 133 U. S. 626–650, 10 Sup. Ct. 438.

For the proper protection of the rights of the several parties in this case, it is necessary that the property covered by complainant's mortgage should be sold in parcels, and not as an entirety. As between complainant, Seaman, and Mason, the facts require that the amount due upon the blanket mortgage held by the complainant should be equitably apportioned among the premises B, C, and D, in proportion of the value thereof. An appraisement should therefore be had, for the purpose of ascertaining the relative value of these several parcels. Premises A should be first sold, and, from the proceeds thereof, provision should be made for the payment of the costs, the amount of which can be ascertained, at least approximately, by the master previous to the sale; so that, when sale is made of premises A, it can at once be known, the amount left unpaid upon complainant's mortgage, and which is to be apportioned between premises B, C, and D, according to the appraised value of each. Then premises C should be next offered for sale, the master stating the amount of the liens thereon, being the apportioned amount of the

balance due upon complainant's mortgage, and the amount due to Edward A. Mason upon his mortgage thereon.  The proceeds realized from the sale of premises C will be applied—First, to the payment of the apportioned amount due to complainant; second, to the amount due Mason upon his mortgage upon these premises; and the balance, if any, will be paid into court, subject to its further order. Premises D should then be offered for sale, the master stating the liens thereon to be the apportioned amount due complainant and the amount due Mason on his mortgage thereon.  The proceeds realized from the sale of premises D will be applied—First, to the payment of the apportioned amount due to the complainant; second, to the payment of the sum due to Mason on his mortgage thereon; third, the balance, if any, to be paid to L. D. Holmes.  Lastly, premises B should be offered for sale, the master stating the amount of the liens thereon, being the apportioned sum due to complainant and the amount due Mason upon his mortgage; and the proceeds realized therefrom will be applied to the payment—First, of the apportioned sum due complainant; second, of the amount due upon the Mason mortgage; and the balance, if any, will be paid to Herbert A. Doud. If the amount realized from the sale of the premises A should not be enough to pay the costs, as estimated by the master, the difference left unprovided for must be added to the sum due to complainant upon the mortgage held by it, and the total of these sums must be taken to be the amount to be apportioned upon the several premises B, C, and D.

By this method of sale, it seems to the court that the rights and equities of all the parties will be fairly protected.  As the several parcels B, C, and D are thus offered for sale, the parties interested in each parcel will know what sum it is necessary to bid in order to protect their rights in that parcel, without being burdened with liens properly belonging to the other parcels; and the probable result will be that each parcel will be sold for the largest sum obtainable therefor, and thus the rights of all will be advanced, and their equities will be protected, so far as it is possible for the court to accomplish that end.

A decree should therefore be prepared in which the amount now due complainant upon its blanket mortgage should be stated, and also the amounts now due to Mason upon the separate mortgages held by him; and a foreclosure sale should be ordered, the order of sale being in accordance with the views herein expressed.