# WOOD *v.* GRAYSON.*

DEEDS OF TRUST; EASEMENTS OF LIGHT AND AIR; COURT TRUSTEES, SALES BY; MORTGAGES, FORECLOSURE OF; PRIORITIES; SELECTION OF COURT TRUSTEES.

1. Deeds of trust, such as are ordinarily used in this District to secure debts, are mortgages in their nature and effect.

*\*Light and Air.*—As to American law relating to easement of light, air, and prospect, see the presentation of authorities in editorial notes to *Case* v. *Minot,* 22 L. R. A. 536, and *Jones* v. *Millsaps,* 23 L. R. A. 158. As to abutting owner's easements of light and air, see editorial notes to *Selden* v. *Jacksonville,* 14 L. R. A. 370, and *Egerer* v. *New York C. & H. R. R. Co.* 14 L. R. A. 381.

2. Except as against the mortgagee, a mortgagor while in possession and before foreclosure is the real owner of the mortgaged property, the mortgage or deed of trust being a mere security for the debt, upon the payment of which the mortgage or deed of trust becomes extinct.

3. It is competent for the owner of two lots, who erects upon one of them a building containing porches which project upon, and windows which overlook, the other lot; and who gives a mortgage upon the lot containing the building,—to add to the security of the mortgage debt by granting to the mortgagee an easement of light and air, and projecting porches over the adjoining lot, so long as the holders of prior mortgages on the lot are not prejudiced.

4. It would seem that, under such circumstances, even without any special words of conveyance, the right to light and air would pass upon the conveyance of the building; but where by the mortgage the land is granted "together with all and singular the improvements, ways, easements, rights, privileges, and appurtenances to the same belonging or in any wise appertaining," etc., such language is an express recognition, not only of the existence *de facto*, but the user of such an easement as appurtenant to the building.

5. Where the mortgage under such circumstances does not limit the extent of the right of easement of light and air over the adjoining lot, but the acts of the parties clearly indicate that a strip of land 10 feet wide is reasonably necessary to supply the light and air to the rooms on that side of the building, the mortgage will carry as a *de facto* appurtenance thereto such an easement in the 10-foot strip of land; following *Frizzell* v. *Murphy*, 19 App. D. C. 440.

6. In foreclosing such a mortgage, covering the building and an easement of light and air in the 10-foot strip of the adjoining lot, and a prior mortgage made before the building was commenced and covering only the lot on which the building was subsequently erected, a decree of the lower court is erroneous which orders the sale of the corporeal estate in the 10-foot strip of land, and not a mere easement in it, as such strip is not embraced in either mortgage.

7. A decree in a suit by a junior mortgage encumbrancer of land to foreclose his mortgage, and for other relief, is not erroneous where it authorizes the sale of the property as a whole, although each of two prior mortgages covers only a portion of the property, where all of the mortgage debts are overdue, and all of the parties interested are before the court, and their rights under their respective mortgages require the property to be sold; and also where the decree in the alternative provides that, if the trustees shall find it more advantageous to the interest of the parties, they shall divide the property and sell the parcels separately.

8. The proper distribution of the proceeds of such a sale, indicated, whether it be of the property as a whole or in parcels.

9. The question of the selection and appointment of trustees to make sales under a decree is a matter exclusively within the power and discretion of the court passing the decree, and its action in the premises is not reviewable on appeal.

No. 1304. Submitted May 20, 1903. Decided October 6, 1903.

HEARING on an appeal by the defendants from a decree of the Supreme Court of the District of Columbia in a suit in equity for an injunction to restrain the sale of certain real estate and for other purposes. *Reversed.*

The COURT in the opinion stated the case as follows:

The bill in this case was filed by the appellees, Grayson and others, against the appellants, Wood, Talbott, and Duke, and others, to have appointed a receiver of what is known as the Victoria flats property, in the city of Washington; to obtain an injunction to restrain the sale of said property; to have declared the right to certain easements alleged to be appurtenant to the said Victoria flats building, and for the sale of that and other adjoining property, for the satisfaction and discharge of certain encumbrances thereon, and for general relief. The case has been in this court on a former appeal, taken from an interlocutory order appointing a receiver *pendente lite,* and which order was affirmed by this court. The case as then presented is reported in 16 App. D. C. 174.

The case as now presented, on pleadings and proof, is quite voluminous, but, as we apprehend the case, the material facts are plain, and about which there is little or no dispute. The most material questions presented on this appeal are, as to the effect and operation of certain deeds of trust creating encumbrances upon the property sought to be sold, and the extent to which said deeds operate, and the right of sale of the property embraced in said deeds of trust, on the application of the complainants.

It appears by bill, answers, and proof, that, on January 13, 1897, Mrs. Alice S. Hill, being the owner, conveyed in fee to Nicholas T. Haller the whole of lots 1 and 2, in block 45, in Hill's subdivision, University Park, in the city of Washington, District of Columbia; a diagram of which lots is exhibited with the bill of complaint.

EXHIBIT B.
Filed, September 6, 1899.

These lots front 150 feet on 14th street extended, and 190 feet on Welling place. They appear to have been purchased as a site for the erection of a hotel or apartment house. To enable him to effect his purpose, Haller negotiated a loan of $75,000; and on January 22, 1897, he executed a deed of trust to B. H. Warner and Louis D. Wine, as trustees, to secure said loan, on the portions of said lots embracing the north 120 feet front thereof by a depth of 124 feet. Simultaneously with said deed to Warner and Wine, Haller executed a deed of trust to the defendants McReynolds and Meriwether, as trustees, of the remaining portions of said lots 1 and 2, to secure his promissory notes aggregating the sum of $12,315, held, at the time of the institution of this suit, by Mrs. Alice S. Hill, Charles M. Carter, and, as collateral security, by the First National Bank of Gaithersburg. At the time of the making of these two mortgages or deeds of trust the lots embraced therein were entirely bare, without any improvements thereon whatever. Haller immediately afterwards proceeded to erect the apartment house, known as the Victoria flats, on the portions of the two lots described in the deed to Warner and Wine. The lines of this deed are delineated on the diagram exhibited.

In the progress of the building of the apartment house, Haller became indebted to various material men and to mechanics in the sum of $30,087.65, and in the further sum of $10,350 for money borrowed. To avoid mechanics' liens upon the property, and to secure this indebtedness, he executed a second mortgage or deed of trust upon that portion of the two lots of ground embraced in the deed of trust to Warner and Wine; which said second deed of trust was made to David C. Grayson and John C. Heald, as trustees, on the 20th day of December, 1897, and was duly recorded. It is this deed that gives rise to the question, whether there was an easement created, for the benefit of the flats building, over the space of 10 feet in the adjoining ground along the south and west walls of that building, to let in light and air to the doors and windows of the building on the south and west sides thereof, and to maintain the porches of the building, erected and projected over such adjoining strip or space.

In and by this deed of trust of the 20th day of December, 1897, the grant is made of the premises as then existing. The apartment building had been erected by Haller, the mortgagor, owning the equity of redemption in both the entire lots 1 and 2; and in the south and west walls of the building he had placed a large number of windows and doors, all of which are shown to be absolutely necessary to the proper and successful use and enjoyment of the building as an apartment house; as, without such windows and doors and the light and air admitted thereto, a large portion of the building would be deprived of necessary light and air, and would be untenantable and useless.

It is also stated, and admitted in the answers of the defendants Wood and Talbott, that the walls of the building of Victoria flats extended over and encroached upon the ground embraced in the deed of trust made to McReynolds and Meriwether; and that the porches of the building on the south and west sides thereof extended out and projected over the adjoining ground covered by the deed to McReynolds and Meriwether, to the extent of about 5 feet; and that the areaways along the walls of the building, on the south and west sides thereof, as alleged by the bill and not denied in the answers, extend over and encroach upon the ground embraced in the trust deed to McReynolds and Meriwether to the extent of several feet. It is conceded by the appellants that, if the adjoining ground on the south and west sides of the flats building should be built upon, close up to the apartment house, the latter would be seriously damaged and reduced in value,—being thereby deprived of light and air to a large portion of the building.

In the deed of trust to Grayson and Heald the parcels of the two lots as described in the deed of trust to Warner and Wine are granted, *"together with all and singular the improvements, ways, easements, rights, privileges, and appurtenances* to the same *belonging, or in any wise appertaining,* and all the estate, right, title, interest, and claim, either at law or in equity, or *otherwise however,* of the party of the first part, of, in, to, or out of the said land and premises." The powers and trusts are then declared, and among these are the powers to collect and apply the

rents and profits of the said building over and above the amount
necessary to pay the interest on the debts secured by the first
deed of trust on said property,—that to Warner and Wine,—and
to pay taxes, insurance, and running expenses of the building,
etc.   And upon default or failure being made in the payment
of said notes or either of them, or upon failure of the parties
of the second part to collect and divide the net rents and profits
as thereinbefore provided for, for a longer period than four
months, then, and in that event, and at any time thereafter, to
sell the said described land and premises at public auction, etc.

Default had been made under the deed of trust to Grayson and
Heald, and in the payment of the interest on the notes secured
by the deed of trust to Warner and Wine; and consequently the
right of sale had accrued before the time of filing the bill in this
case.   The first deed of trust, that to Warner and Wine, is not
made an exhibit to the bill; but it is agreed that it is correctly
stated in the bill of complaint.

It appears that, by arrangement, the firm of Warner and Wine
were to collect the rents of the building, which were sufficient
to pay all charges enumerated, including the interest on the sec-
ond trust notes, until May, 1899, when the defendants, Wood
and Talbott, proposed to Heald, one of the trustees in the second
deed of trust, that the commissions to Warner and Wine could
be saved by allowing Wood to collect the rents and apply the
same as required by the trusts, to which proposition Grayson and
Heald assented; and Wood from thence collected the rents, but,
as charged in the bill and shown in proof, has failed to apply or
pay over the same as required.   Wood was in control and con-
ducted the affairs of the Victoria flats building for a time, and
it is said that he conducted the establishment with success.   But
it is averred, and testified to by Wood and Talbott, that it was
found to be impossible to meet the exorbitant interest charges
from the revenue; and hence the default, and the desire of Wood
and Talbott to take up the notes secured by the second mortgage,
by discounting them at a heavy rate, and thus reduce the mort-
gage indebtedness.   On the other hand, it is alleged and shown
in proof, that Wood and Talbott first endeavored to purchase the

second trust notes at a heavy discount, and failing in that effort, they threatened that the holders of those notes should get nothing if they could prevent it; and that they thereupon made default in the first instalment of interest on the first mortgage notes falling due after Wood had undertaken the management of the property, apparently, as alleged, for the very purpose of bringing about a default and a consequent foreclosure sale of the property, to the end that they might purchase it at a reduced price, free and clear of the mortgage debts, and thus cause great loss and injury to the holders of the indebtedness. This alleged object and purpose on the part of the defendants Wood and Talbott, they have very emphatically denied, both in their answers and in their testimony as witnesses. But whether this fact be true or false, it is undeniably true that there is a large default under both deeds of trust on the Victoria flats building, without any means of payment of either interest or principal, except by sale of the property and the application of the proceeds of the sale to the payment of the debts, according to the order and priority in which they are charged upon the property.

[The decree appealed from by the defendants, Wood, Talbott and Duke, was as follows:

"This cause coming on to be heard upon the pleadings and the evidence, and having been argued by the solicitors for the parties, respectively, and duly considered, it is thereupon by the court this 23d day of January, A. D. 1903, adjudged, ordered, and decreed,

"1. That, as against the defendants Frank I. Wood, H. Maurice Talbott, and Bernard A. Duke, their heirs and assigns, and as against the defendant Nicholas T. Haller, his heirs and assigns, other than the defendants Frederick W. McReynolds and James H. Meriwether, the property covered by the building called the Victoria flats, together with the overhanging porticos and other projections on the south and west sides of the said building, and the approaches to the entrances along the said sides of said building into the areas connected therewith, and properly appurtenant to the same, is subject to the deed of trust from the defendant Nicholas T. Haller to the defendants Brainard H. Warner, and

Louis D. Wine, trustees, of January 22d, 1897, recorded in liber 2180, at folio 340, of the land records for the District of Columbia, and, also, to the deed of trust from the said defendant Nicholas T. Haller to the complainant David C. Grayson and the defendant John C. Heald, trustees, of December 20th, 1897, recorded in liber 2291, at folio 133, of the said land records, as set forth in the bill.

"2. That, as against the defendants Frederick W. McReynolds and James H. Meriwether, trustees under the deed of trust from the said Haller, of the 22d day of January, 1897, described in the bill, and as against the holders of the promissory notes secured thereby, as in the said bill set forth, and as against the said Brainard H. Warner and Louis D. Wine, trustees under the deed of trust to them, of the 22d day of January, A. D. 1897, and as against the holders of the promissory notes secured thereby, the complainants are entitled to a decree for the sale of the said building, with all the appurtenances, as described in the preceding paragraph hereof, as claimed in the bill, for the purpose of raising the money due under the said deed of trust, and, also, the moneys due under the deed of trust to Greyson and Heald, trustees, as set forth in the bill; and that power is hereby given to the three trustees hereinafter appointed, to sell, for the purpose of raising the moneys necessary to discharge the promissory notes secured by the said deed of trust to McReynolds and Meriwether, all the residue of the lands conveyed by Alice S. Hill to N. T. Haller, as set forth in the bill, excepting the said 10-foot strip, appurtenant to the said Victoria flats.

"3. That Brainard H. Warner, Frederick W. McReynolds, and David C. Grayson be, and they hereby are, appointed trustees to make the said sale, and the manner of their proceedings shall be as follows:

"They shall first file with the clerk of this court a bond to the United States of America, executed by them with a surety or sureties approved by the court, or by one of the justices thereof, in the penalty of $100,000, conditioned for the faithful performance of the trust reposed in them by this decree, or which may be reposed in them by any future order or decree in the premises;

and the said trustees shall first give notice by publication in the Evening Star and Washington Post newspapers, daily except Sundays and legal holidays, for ten (10) days prior to any sale hereunder, giving notice of the time, place, manner, and terms of any such sale, which terms shall be as follows in respect to any sale by them, as hereinafter provided: One third of the purchase money in cash, one third in one (1) year and one third in two (2) years, or all cash at the purchaser's option, the deferred payments, if any, to be represented by the promissory notes of the purchaser, bearing interest from the day of sale at the rate of 5 per cent per annum, payable semi-annually, and secured by deed of trust upon the property, or the respective parcels of property to which they relate.

"It is further ordered that, in making sale or sales, the trustees are authorized to advertise and sell the said property as a whole, if they shall find it expedient and advantageous so to do, and they may offer it in that form, with power to withdraw the same from sale if a sufficiently advantageous bid shall not be received for it as a whole; and, if the said trustees shall find it advantageous and advisable not to sell the said property as a whole, they are authorized to divide and sell the same separately; in which case they shall offer the Victoria flats building, with a strip of land along the south and west sides thereof, ten (10) feet in width; and they shall subdivide and offer for sale the residue of the land in such parcels as to them shall seem most advantageous and desirable, and shall sell the said parcels or so much thereof as shall be necessary to discharge the amount remaining due on the said several deeds of trust, respectively, together with the costs of the sale, and shall bring into court the proceeds thereof, subject to its further order.

"It is further adjudged, ordered, and decreed that, in the distribution of the proceeds of the sale or sales hereby authorized, after payment of the costs of the said sales and of this suit, there shall first be applied to the satisfaction of the notes secured by the deed of trust to the defendants McReynolds and Meriwether such proportionate part thereof as shall represent the value of the said land exclusive of that upon which the Victoria flats building

stands, with its porticos, projections, and approaches as herein-
before set forth, and of the strip of land upon the south and west
sides hereinbefore authorized to be sold with it, and, if such share
or portion of the said proceeds of sale shall be sufficient to satisfy
the promissory notes secured by the said deed of trust to the de-
fendants McReynolds and Meriwether, any surplus thereof
shall be paid to the defendants Talbott and Wood or their as-
signs; while if, after such application of the said above desig-
nated share or portion of the proceeds of sale, there shall remain
any unpaid balance of the said last-above-mentioned promissory
notes, there shall further be applied to their payment, so far as
may be necessary, such share remaining of the proceeds of sale
as shall represent the value of the said ten (10) foot strip on the
south and west sides of the said building over which its said
porticos, projections, and approaches extend or lie, and which
is to be sold with it as hereinbefore provided, and the remain-
ing proceeds of sale shall be applied, first, to the payment of the
promissory notes secured by the deed of trust to the defendants
Warner and Wine until they are fully satisfied, and then to the
payment of the notes secured by the deed of trust to the defend-
ants Grayson and Heald until the same shall be fully paid and
satisfied, after which any surplus shall be paid to the defendants
Talbott and Wood, their representatives or assigns.

"4. It is further ordered that this cause be, and the same here-
by is, referred to the auditor of this court, with instructions to
examine such evidence as may be produced, to ascertain and re-
port with all convenient speed what are the values, respectively,
of the ground described by metes and bounds in the deed of trust
to the defendants Warner and Wine and Grayson and Heald, re-
spectively, the value of the strip of ground ten (10) feet in
width along the west and south walls of the Victoria flats build-
ing, and the value of the ground described in the deed of trust to
the defendants McReynolds and Meriwether, exclusive of such
strip, and that no sale hereunder shall be made until the auditor
shall have filed his said report.

"5. It is further adjudged, ordered, and decreed that the com-
plainants recover of the defendants Frank I. Wood and H.

Maurice Talbott their costs in this cause, to be taxed by the clerk, and that the complainants have execution therefor as at law.   A. B. HAGNER, Asso. Justice."—REPORTER.]

*Mr. John Ridout* and *Mr. Charles F. Carusi* for the appellant.

*Mr. J. J. Darlington* and *Mr. Jesse E. Potbury,* for the appellees:

1. The case of *Manogue* v. *Bryant,* 15 App. D. C. 245, is believed to be entirely in line with the facts of the present case in every respect, and rules it.   The case of *Frizzell* v. *Murphy,* 19 App. D. C. 440, 446, is also identical in effect, holding it well settled, both upon principle and authority, that where the owner of both a quasi-dominant and a quasi-servient tenement conveys the former, retaining the latter, all such continuous and apparent quasi-easements as are reasonably necessary to the enjoyment of the property pass to the grantee, giving rise to an easement by implied grant.   At the date of the Grayson trust, Haller, owning both the quasi-dominant and the quasi-servient tenement, conveyed the former and retained the latter.   The case of *Janes* v. *Jenkins,* 34 Md. 1, is also precisely in point and to the like effect; and, although the supreme court of Massachusetts, in *Keats* v. *Hugo,* 115 Mass. 204, 216, cited by appellants, in an opinion by Mr. Justice Gray, questions the authority of *Janes* v. *Jenkins,* that learned justice later concurred in the opinion in *Shepherd* v. *Pepper,* 133 U. S. 626, 650, asserting the same doctrine as *Janes* v. *Jenkins.*

2. It is claimed that the decree is erroneous in that it gives affirmative relief to the note holders under the Warner trust, who have filed no cross bill.   The complainants in this case are in no wise concerned with the Warner trust, except in so far as their own lien is subordinate to it.   That the Warner note holders would probably be secured, notwithstanding the attempted withdrawal of the 10-foot strip from the flats, is evidenced, not only by their failure to take any active part in this litigation, but by the fact that, at the time of their foreclosure advertisement, the

appellants were arranging with them to replace their trust upon the property, after the sale. The provision of the decree now in question was necessary for the protection of the Grayson note holders, and therefore required no cross bill by those holding under the Warner trust. A sale under the latter trust, separating the 10-foot strip from the flats building, would cut out the Grayson note holders from all the security afforded by their trust deed upon the flats building proper, and would leave to them only the equitable rights of the flats building over the 10-foot strip, or, in other words, the porches, areaways, and the right to light and air for a building their security upon which had been extinguished. It was for this reason that the decree below provided against sale under the Warner trust, except upon terms of adding to it the 10-foot strip.

3. It is objected that the decree below gives more relief than was asked, in that it provides in the alternative for the sale, as an entirety, of both the McReynolds and the Victoria flats properties. It is true that the appellees have at no time asked that the two properties should be sold as one, or contended that it was necessary to do more than restore to the flats building the 10-foot strip taken from it by the appellants under the circumstances heretofore pointed out. The decree presented on behalf of the appellees to the court below is added as an appendix to this brief, but was then opposed by the learned counsel for the appellants on the ground that, as the court below based its opinion largely upon *Shepherd* v. *Pepper,* the logical thing to do was to follow the form of the decree in that case. With regard to the objection on this ground, now here first presented, it is to be noted that neither the trustees under the McReynolds trust, nor any holder of the notes thereby secured, have united in this appeal, or made any objection to the decree, either on this or on any other ground. From the standpoint of the appellants themselves, it can hardly be claimed that they have just cause to object to a form of decree which provides for sale, either as a whole or in parts, as may prove most promotive of the best results and the realization of the highest price. The appellees, however, as stated, have never insisted, nor do they now insist, upon the alternative provision

of the decree to this effect, but will be entirely content with a decree in the form presented in the appendix, or in any other form which, in the language of the bill, will constitute "equitable terms with regard to the holders of the promissory notes secured by the deed of trust to McReynolds and Meriwether." As stated, the holders of these notes a.e entirely satisfied with the decree in its present form.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

1. At the time of the making of the deed of trust to Warner and Wine, on the 22d of January, 1897, as we have before stated, there was no building or improvement on the ground conveyed by that deed. Nothing was conveyed but the bare ground within the limits described in the deed. But with respect to the second deed of trust, that to Grayson and Heald, made on the 20th day of December, 1897, the subject of the conveyance was in a different condition. Before the making of this latter deed, Haller, the grantor or mortgagor, had erected on the ground conveyed, the building known as the Victoria flats, an apartment house; and this building in its south and west walls had many windows and doors therein, deriving light and air from and over the adjoining property owned by the said Haller, the mortgagor. It had also porches on the south and west sides, projecting over the adjoining ground some 5 or 6 feet, and areaways in front of the doors and windows in the ground story on those sides of the building. All these constituted parts of the building, and to their use and enjoyment the light and air furnished from the adjoining open space were necessary, and without which the value of the building would be seriously impaired. Haller certainly had the right so to construct the building. The deeds of trust made by him of the several parcels of the two lots were in their nature and effect mortgages to secure debts. *Hitz* v. *Jenks, 123 U. S.* 298, 31 L. ed. 157, 8 Sup. Ct. Rep. 143; *Olcott* v. *Bynum,* 17 Wall. 44, 21 L. ed. 570. Being mortgagor, he was the real owner of the several parcels in fee. The equity of redemption is considered to be the real and beneficial estate; and it is accord-

ingly held to be descendible by inheritance, devisable by will, and alienable by deed, precisely as if it were an absolute estate of inheritance at law. Except as against the mortgagee, the mortgagor, while in possession and before foreclosure, is regarded as the real owner, the mortgage or deed of trust being a mere security for debt, upon the payment of which the mortgage or deed of trust becoming extinct. And such being the right, and power of Haller, the mortgagor, over the divided parcels of the two lots, it was perfectly competent to him, not only to make the second deed of trust of the parcel of ground upon which the Victoria flats building had been erected, but to create and annex to that building, a *de facto* easement for light and air, and projecting porches, over the adjoining vacant ground belonging to the mortgagor, as adding security for the debts embraced by the deed of trust to Grayson and Heald; but not to the prejudice of any prior mortgage or deed of trust covering the adjoining vacant parcel of ground.

It is certainly a well-settled principle, indeed not questioned, that a good title to the passage of light and air to windows may be given by grant or express agreement; and, it being a well-settled rule of construction that the grant of a principal thing shall be held to carry with it all that is reasonably necessary for the enjoyment of the thing granted, for the purpose for which, according to the obvious intent of the parties, the grant was made; and that a grant is always to be taken strongly against the grantor,—it would appear that the right to light and air would pass upon the conveyance of the building, under the circumstances, by the grant itself, where, as in this case, light and air are apparently necessary, even without any special words of conveyance. *Pomfret* v. *Ricroft,* 1 Wms. Saund. 320, and notes; *Blakesley* v. *Whieldon,* 1 Hare, 176, 180. But, without deeming it necessary to apply the principle as thus broadly stated, the deed of trust to Grayson and Heald, by express terms, not only recognizes the existence *de facto,* but the user, of easements of ways, *rights, and privileges, as appurtenant* to the said building. This is the clear import of the deed of trust. It is true, the deed, by its terms, does not limit the extent of the right of easement of

light and air over the adjoining ground on the south and west
sides of the building, but the acts and dealings with the subject
by Haller, Wood, and Talbott would clearly indicate that they
found that a strip or space 10 feet wide on the south and
west sides of the Victoria flats building was reasonably nec-
essary to supply the light and air to the rooms and apartments on
those sides of the building.   It is competent to arrive at the nec-
essary extent of the space or area by what the parties have done
in regard to it, and what they have recognized as reasonably nec-
essary in actual use.   *Hall* v. *Lund,* 1 Hurlst. & C. 676, 683.

This case would seem to be clearly within the principle of the
decision of the Supreme Court of the United States, in the case
of *Shepherd* v. *Pepper,* 133 U. S. 626, 650, 33 L. ed. 706, 715,
10 Sup. Ct. Rep. 438, 446.   The facts in that case, as stated in
the headnotes of the report, are these:   S. gave two deeds of trust
of a lot of land in the District of Columbia to secure loans made
by B. & P. Afterwards he gave a deed of trust of the same lot of
ground to secure a loan made by C., that deed covering also a lot
in the rear of the first lot, and fronting on a side street.   At the
time all the deeds were given there was a dwelling on the prem-
ises, the main part of which was on the first lot, but some of
which was on the rear lot.   P., on an allegation that B., a trus-
tee in each of the first two deeds, had refused to sell the property
covered by them, filed a bill asking the appointment of a trustee
in the place of those appointed by the first two deeds.   A new
trustee was appointed and the property was sold under the first
deed.   S. then filed a bill to set aside the sale, and P. filed a
cross bill to confirm it.   That bill was dismissed; and P. then
filed a bill against S. and C., and all necessary parties, to have a
trustee appointed to sell the land covered by all three trust deeds,
and the improvements on it, to have a receiver of the rents and
profits appointed, and to have the rents and proceeds of sale ap-
plied first to pay P.   A receiver was appointed, and a decree
made for the sale of the entire property, as a whole, by trustees
whom the decree appointed, and for the ascertainment by the
trustees of the relative values of the land covered by the first two
trust deeds and the improvements thereon, and of the rear piece

of land and the improvements thereon, and for the payment to P. of the net proceeds of sale representing the value of the land and improvements covered by the first two deeds, less the expenses chargeable thereto, and of the residue to C., and, out of the rents, to P. what he had paid for taxes and insurance premiums, etc. That decree was affirmed by the Supreme Court of the United States; Mr. Justice Miller dissenting upon one of the propositions involved, but which is not important to the question now under consideration.

In the opinion of the court, as delivered by Mr. Justice Blatchford, it is said: "In regard to Mrs. Gray, the letter to her, written by Mr. Brown of the firm of Fitch, Fox & Brown, who were negotiating for her the loan to Shepherd, the letter being dated, * * * speaks of the loan as one 'to be secured by a second mortgage, the prior mortgage being for $45,000.' Besides this, the first two deeds of trust were recorded respectively June 3, 1874, and March 24, 1875, and they conveyed, to secure Pepper, the premises described in them, 'together with all the improvements, ways, easements, rights, privileges, and appurtenances to the same belonging or in any wise appertaining, and all the estate, right, title, interest, and claim, whatsoever, whether at law or in equity, of the said parties of the first part, of, in, to, or out of the said piece or parcel of land and premises.' The improvements and easements in question *were visibly necessary for the dwelling house as then constructed, and were visibly upon, or required the use of, sublot A.,* as stated by Shepherd as before recited. Mrs. Gray is only a mortgagee, and not the owner in fee of sublot A; and her interest in the property is subject to the prior and subsequent interests of other parties, as those interests are usually ascertained and administered by a court of equity for the benefit of all concerned. It is not equitable that she should be allowed to use her mortgage on sublot A to prevent a sale of the entire lot 3. Her only right can be to have the proceeds of sublot A applied first to the payment of her debt, and that right is secured by the decree appealed from."

In the case of *Janes* v. *Jenkins,* 34 Md. 1, 6 Am. Rep. 300, while some of the language employed in the opinion of the court

would seem to be broader than was necessary for the decision on the facts of the case, the principle upon which the case was decided would seem to be strictly in line and accord with the principle just cited from *Shepherd* v. *Pepper,* 133 U. S. 626, 650, 33 L. ed. 706, 715, 10 Sup. Ct. Rep. 438. And in the recent case in this court of *Frizzell* v. *Murphy,* 19 App. D. C. 440, the same principle was held and applied to a state of facts quite analogous to the facts of the present case.

This principle has been very clearly stated and illustrated by Mr. Justice Story in the case of *United States* v. *Appleton,* 1 Sumn. 492, Fed. Cas. No. 14,463. There a block of buildings, consisting of a central building and two wings, was erected in 1808, with a piazza in front of the central building, and side doors in the wings, which opened on and swung over the piazza, the upper parts of which were used as windows. The center building was occupied by the United States as a custom house, under a lease from 1808 to 1816, when they purchased the same in fee, and had from that time been in possession thereof. The wings, projecting beyond the front of the custom house, were sold in 1811 to other parties, and were used as stores; and it was held that those parties were entitled under the conveyance, independent of the lapse of time, to the use of the side doors and windows therein, and passage therefrom, as they were used at the time of the conveyance. That where a house or store is conveyed by the owner thereof everything passes which belongs to, and is in use for, the house, or store, as an incident or appurtenance. And after stating the well-established principle in the construction of grants, and citing the authorities therefor, the learned justice said: "In truth, every grant of a thing naturally and necessarily imports a grant of it, *as it actually exists,* unless the contrary is provided for. Here, the side door in question was in actual use, as an appurtenance *de facto,* at the time of the grant. Could the owners of the central building on the next day after have shut it? Could they have shut out all the light of the window in the upper part of it? Could they have built down to Custom House street, and filled up the piazza? In my opinion it is most clear that they could not. Their grant carried by nec-

essary implication a right to the door and window, and the pas-¬
sage, as it had been, and as it then was, used."

Doubtless, there is a diversity of judicial opinion in the
American courts upon the subject of implied grant of light and
air, but not where there is a clear intent, or [the] terms of the
grant [provide] that such right should exist and be conveyed
with the principal object of the grant. By the building of the
Victoria flats, and the placing in the south and west walls there-
of the windows and doors, and the erection of the porches there-
on, overhanging the adjoining ground of the owner of the build-
ing, was created an easement *de facto* as an appurtenant to the
building, and this easement was conveyed by the deed of trust
to Grayson and Heald. It is clear, we think, that Haller, after
the execution of that deed, could not have closed up the doors
and windows in the south and west walls of the building, or tak-
en down the porches, without the consent of the trustees and
parties interested in the trust of that deed; as by so doing he
would have impaired the security for the debts, for which that
deed was given, and thus derogated from the operation of his
grant.

Recognizing the conflict of decision of the American courts
upon the subject of implied grants of light and air, Professor
Washburn, in his Treatise on Easements, p. 618, has deduced a
conclusion from the authorities, that would seem both just and
reasonable, and which has been adopted by several of the Ameri-
can courts. That conclusion is, that "so far, therefore, as weight
of authority, both English and American, goes, it would seem
that if one sell a house, the light *necessary* for the reasonable en-
joyment whereof is derived from and across adjoining land, then
belonging to the same owner, the easement of light and air over
such vacant lot would pass as incident to the dwelling house, *be-
cause necessary to the enjoyment thereof;* but that the law would
not carry the doctrine to the securing of such easement, as a mere
convenience to the granted premises."

Without referring to other authorities, or making further com-
ment, we are clearly of opinion that the deed of trust to Grayson
and Heald, conveying the Victoria flats building, carried, as a
*de faclo* appurtenance thereto, an easement in the 10-foot strip

of land along and adjoining the south and west walls of said buildings, to admit light and air to the doors and windows in said walls, and the free use and enjoyment of the porches along said walls as part of the building.

2. It is next objected to the decree of the court below that it adjudges and directs that, in the event that the property embraced in the several deeds of trust should not be sold in its entirety and as a whole, then, the Victoria flats building, with a strip of land along the south and west sides thereof, 10 feet in width, shall be sold as one parcel,—not the mere easement in the 10-foot strip, but the corporeal estate therein, as part of the ground covered by the deeds to Warner and Wine, and to Grayson and Heald, respectively. It further directs that the amount of purchase money representing the value of the said strip of ground, after payment of the notes secured by the deed of trust to McReynolds and Meriwether, should be applied, first, to the payment of the debts secured by the deed of trust to Warner and Wine, and, secondly, to the payment of the debts secured by the deed of trust to Grayson and Heald, to the extent required for that purpose.

In thus decreeing the sale of the 10-foot strip of ground as a corporeal annex and as part of the property of the Victoria flats building, with direction, in a certain event, to distribute any portion of the proceeds of sale of that strip to the satisfaction of the debts secured by the deed of trust to Warner and Wine, we think there was error. As we have already stated as a conceded fact, at the time of the making of the trust deed to Warner and Wine, the Victoria flats building was not in existence, and the parts of the two lots of ground embraced in the deed are described by certain and definite limits and bounds. There was, therefore, nothing to which an easement by user or necessity could be appurtenant, such as is claimed in this case. It is well-settled principle that, where there is a conveyance of a specific parcel of land carved out of a larger parcel held by the grantor and described by metes and bounds, nothing which is not included within the boundaries so described passes by the deed; and therefore a right of way through the premises of the grantor does not pass. *Grant*

*v. Chase,* 17 Mass. 443, 9 Am. Dec. 161; Washb. Easements,
*26. Moreover, an easement, or right in the nature of an ease-
ment, is not a right to land nor to any corporeal interest in land;
and hence a grant of a right of way does not convey the soil over
which the way passes to the grantee, and *a fortiori* not in the case
of a grant of a mere right to light and air over a strip of ground.
Goddard, Easements, 2.   A mere easement may, without express
words, pass as an incident to the principal object of the grant;
but it would be absurd to allow the fee or other estate in one piece
of land, not mentioned in the deed, to pass as appurtenant to an-
other distinct parcel, which is expressly granted by precise and
definite boundaries.   The well-settled principle is, that land can-
not be appurtenant to land.   Co. Litt. 121 *b; Harris v. Elliott,*
10 Pet. 25, 53, 9 L. ed. 333, 344; *United States v. Harris,* 1
Sumn. 21, 37, Fed. Cas. No. 15,315.   The deed of trust to
Warner and Wine conveyed nothing except the ground described
therein, and the building subsequently erected thereon and which
became a part of the parcels of the lots conveyed.   But as to the
deed of trust subsequently made to Grayson and Heald, that deed
not only covers the same ground and the building thereon as that
embraced in the deed of trust to Warner and Wine, but also
carries a right, by way of easement, to light and air over the ad-
joining strip of ground on the south and west sides of the Vic-
toria flats building, of 10 feet width, and the free use of the
porches on said sides of the building overhanging said strip of
ground.   There was therefore error in directing the sale of the
Victoria flats building together with the strip of ground 10 feet
wide as an annex or appendant to the building,—such strip of
ground not being embraced in either deed to Warner and Wine,
or that to Grayson and Heald.

3.   The next objection to the decree is that it authorizes the sale
of the property as a whole,—that is, the entire two lots of
ground, with the improvements thereon, without reference to the
previous division into parcels.   In this we do not perceive that
there was error.   It is in accordance with established practice of
courts of equity, where the entire subject-matter, though in sepa-
rate parcels, and all the parties concerned therein, are before

the court, and subject to its direction and control. As we have before stated, all the debts secured by the several deeds of trust are overdue, and the rights and interests of the parties under the several deeds of trust require the property to be sold. In the case of *Shepherd* v. *Pepper,* 133 U. S. 626, 650, 33 L. ed. 706, 715, 10 Sup. Ct. Rep. 438, 446, a similar objection to that here made was made to the decree in that case. But the Supreme Court, in disposing of the objection, said: "The present bill is one to obtain a decree for the sale of encumbered premises, and the application of the proceeds of sale to discharge the encumbrances according to priority. The debts to Pepper and to Mrs. Gray are overdue; and under such circumstances a court of equity, on the application of a junior encumbrancer, will provide for the sale of the entire encumbered property [consisting of different parcels], if the circumstances of the case show that the interests of the mortgagor and of the encumbrancers require the sale;" citing many authorities for the practice. "This authority," says the court, "is properly exercised in the case of deeds of trust, where all the encumbrances are due and where the plaintiff has a first lien on some of the property sought to be sold, and where all the encumbrancers are parties to the suit. Here, Pepper has a first lien on the bulk of the property sought to be sold, and a second lien, as decreed, on the small remaining portion; and the debts secured by the first two deeds of trust were all overdue when the bill in this case was filed, as well as the debt due to Mrs. Gray. Under such circumstances the mere nonassent of Mrs. Gray ought not to prevent the court from doing what is equitable in regard to the claims of Pepper, as well as those of herself." See also the case of *Olcott* v. *Bynum,* 17 Wall. 44, 21 L. ed. 570.

The decree in the alternative provides that, if the trustees should find it to be more advantageous to the interests of the parties, they should divide the property and sell the parcels thereof separately; in which case they are required to offer the Victoria flats building part together with the strip of land along the south and west sides thereof, 10 feet in width, as one part, and the residue in such parcels as they should find to be advantageous and

advisable. To this we perceive no objection, except in respect to the annexation, and selling the 10-foot strip of adjoining ground together with the Victoria flats building parcel; that direction of the decree we have shown to be erroneous and unwarranted. If the property should be sold in its entirety, and should bring a price more than sufficient to pay costs, and expenses of sale, and all the trust debts secured by the deeds of trust, in their order of priority, in such case, there could be no difficulty in apportioning the proceeds of sale among the parties entitled thereto. In that event it would only be necessary to show by proof the value, as represented by the sale, of the flats-building parcel, with and without the value of the easement added. After payment of its portion of costs and expenses, the value of the flats-building parcel, without the value of the easement added, would be distributable to the payment of the debts secured by the deed of trust to Warner and Wine; and the residue of such proceeds thus produced, together with any balance of the value, as represented in the proceeds of sale, of the easement over the 10-foot strip of ground, after payment of the debts secured by the deed of trust to McReynolds and Meriwether, on the parts of the lots not embraced in the deed to Warner and Wine, but embracing the 10-foot strip, will be distributable to the debts and interest secured by the deed of trust to Grayson and Heald; and any balance of proceeds that may remain will be distributable to the owners of the equity of redemption in the premises sold.

But if the property decreed to be sold is not sold in its entirety, and as a whole, but in parcels, the manner of apportioning the proceeds of sale will be somewhat differently made, though not substantially variant in result from that just stated. The parcel comprising the Victoria flats, together with the easement over the 10-foot strip of ground adjoining on the south and west sides of the flats building, will be sold as one parcel; and the proceeds of sale thereof, after deducting proper proportion of costs and expenses, will, less the value in such proceeds as may be shown by proof of such easement, be applicable to the payment of the debts secured by the deed of trust to Warner and Wine. The residue of the proceeds arising from the sale of that parcel, with-

out the value of the easement ascertained by proof as aforesaid, together with whatever balance of the value of the easement so ascertained that may remain after the payment of the debts and interest secured by the deed of trust made to McReynolds and Meriwether, will be applicable to the payment of the debts and interest secured by the deed of trust to Grayson and Heald. If any balance of the proceeds of sale or sales shall remain, after thus discharging the debts and interest, in the order stated, and costs and expenses of sale, that balance will be distributable to the owners of the equity of redemption.

4. There is also some objection made to the decree because of the appointment of one of the trustees to make the sale of the property under the decree; that party being one of the complainants and one of the trustees in a deed creating a junior encumbrance upon a part of the property. But the question of the selection and appointment of trustees to make sales under decrees is a matter exclusively within the power and discretion of the court passing the decree, and from whose action in respect to such appointment no power of review exists in this court.

We shall reverse the decree and remand the cause that the decree appealed from may be modified, and be made to conform to the foregoing opinion of this court. Under the circumstances of the case, we shall direct the cost of this appeal to be paid out of the fund produced by the sale of the property decreed to be sold; and it is so ordered. *Decree reversed and cause remanded.*