EVERGLADES DRAINAGE LEAGUE et al. v. NAPOLEON B. BROWARD
DRAINAGE DIST. et al.

(District Court, S. D. Florida. July 29, 1918.)

1. COURTS ⊚⇒299—FEDERAL COURTS—JURISDICTION—FEDERAL QUESTION—
PLEADING.

Although bill to restrain collection of drainage tax, imposed pursuant
to Laws Fla. 1917, c. 7430, § 7, did not specifically attack section 7,
where it contained allegations that said section deprived complainants
of their property, without due process of law, it raised a federal ques-
tion, vesting federal court with jurisdiction, provided matter in con-
troversy exceeded $3,000, exclusive of interest and costs.

2. COURTS ⊚⇒329—FEDERAL COURTS—JURISDICTION—AMOUNT—PLEADING.

In suit to restrain collection of drainage tax, complaint alleging gen-
erally that amount exceeds $3,000, and making Exhibit A, attached to
bill, a part of the same, and praying reference, held to sufficiently show
that amount in controversy was over $3,000, exclusive of interest and
costs, so that federal court had jurisdiction.

3. EQUITY ⊚⇒152—EXHIBITS—INCORPORATION BY REFERENCE.

Making exhibit attached to bill a part thereof, and praying refer-
ence, had the same effect as though the facts set out in the exhibit were
alleged in the body of the bill.

4. COURTS ⊚⇒326—FEDERAL COURTS—JURISDICTION.

Where bill showed jurisdictional amount in controversy in B. coun-
ty, between one of complainants and all defendants, except tax collector
of D. county, joinder of other parties complainant and said tax collector
defendant ceases to be a jurisdictional question, and bill will not be dis-
missed for want of jurisdiction of federal court.

5. COURTS ⊚⇒347—EQUITY RULES—MULTIFARIOUSNESS.

In suit by voluntary association of landowners against a drainage
district and the respective tax collectors of two counties, to restrain col-
lection of drainage tax imposed pursuant to Laws Fla. 1917, c. 7430,
contention being that act is in violation of Const. U. S. Amend. 14, bill
held not multifarious, in view of equity rule 38 (198 Fed. xxix, 115 C.
C. A. xxix), as to one or more of a class suing or defending for the
whole; each complainant being interested in the subject-matter, but in
different amounts, and each defendant being connected, though different-
ly, with the whole dispute.

6. EQUITY ⊚⇒147—MULTIFARIOUSNESS.

That complainants prayed for relief to which they were not entitled,
or alleged facts not material to relief, would not make bill multifarious.

7. STATUTES ⊚⇒3—ENACTMENT—LEGISLATURE DE FACTO.

That there had been no compliance with Const. Fla. art. 7, §§ 3–5,
which requires Legislature every 10 years to apportion representation,
would not make invalid laws passed by a subsequent Legislature; a
Legislature regularly organized and recognized as the existing Legisla-
ture being the "Legislature de facto."

8. DRAINS ⊚⇒13—RECLAMATION—SUBDISTRICTS—AUTHORITY TO CREATE.

It is within the authority of the Legislature to create a subdistrict
for reclamation of a larger district theretofore created.

9. COURTS ⊚⇒351½—FEDERAL PROCEDURE—MOTION TO DISMISS—FUNCTIONS.

A motion to dismiss under equity rules takes place of a demurrer, and
admits the facts alleged.

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

10. DRAINS ⊜⊃2(1)—STATUTE—VALIDITY.

Laws Fla. 1917, c. 7430, does not violate Const. Fla. art. 6, § 7; it not creating the office of drainage supervisors for a greater period than four years.

11. DRAINS ⊜⊃88—COLLECTION OF TAXES—FAILURE TO MAKE DELINQUENT RETURNS.

That drainage supervisors, instead of having tax collectors return books as delinquent, authorized books to be retained and tax continued to be collected, would not invalidate tax, although such action was unauthorized.

12. DRAINS ⊜⊃69—TAXES—VALIDITY.

That uniform acreage tax of 25 cents per acre, instead of 24½ cents, imposed by drainage board, pursuant to Laws Fla. 1917, c. 7430, § 7, would produce a surplus over estimated expense, would not invalidate tax.

13. EQUITY ⊜⊃264—MOTION TO STRIKE—SUFFICIENCY.

Motion, undertaking to reach certain parts of bill by setting out effect of portions to which it refers, will not be considered, as court cannot be required to go through the entire pleading to find what portion is attacked by motion to strike.

In Equity. Bill by the Everglades Drainage League and others against the Napoleon B. Broward Drainage District, and A. B. Lowe and others, as supervisors thereof, W. O. Berryhill, Tax Collector of Broward County, and R. B. McLendon, Tax Collector of Dade County. On motion to dismiss bill and to dismiss certain portions of the bill. Motion to dismiss bill denied, and motion to dismiss portions of the bill granted in part and denied in part.

Clair D. Vallette, of Washington, D. C., for complainants.

Glenn Terrell, of Tallahassee, Fla., special counsel for Internal Improvement Board.

Atkinson & Burdine, of Miami, Fla., for defendants.

CALL, District Judge. This cause came on to be heard before Circuit Judge WALKER, and District Judges CALL and CLAYTON, at Birmingham, Ala., on the application of the complainants for an interlocutory injunction under section 266 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1162 [Comp. St. 1916, § 1243]), restraining the board of drainage commissioners of the Napoleon B. Broward drainage district and the tax collectors of Broward and Dade counties from collecting the uniform acreage tax of 25 cents per acre imposed by the board of drainage commissioners of said drainage district, pursuant to section 7 of chapter 7430 of the Acts of the Florida Legislature, approved May 26, 1917.

The bill was filed by the Everglades Drainage League, a voluntary association claiming more than 1,000 members, owning lands in the Everglades Drainage District, a certain Florida corporation, for themselves and all others in like interest. They claim to own lands included in Everglades patent No. 137, issued by the United States to the state of Florida, pursuant to the grant of the swamp and overflowed lands act of 1850, which lands are included in the Everglades drainage district, established by the Legislature of said state, for the pur-

pose of reclaiming them, and also within the limits of the Napoleon B. Broward drainage district; that a majority of the members of the league acquired their lands prior to 1911, by purchase for value.

The bill then sets out the substance of chapter 7430, Acts of the Florida Legislature, and the fact that the board of drainage commissioners of the Broward drainage district met and organized by the election of one of its members as chairman and levied an acreage tax of 25 cents per acre on the lands within the district. It then proceeds to set out certain provisions of the Constitution of Florida, as to the apportionment of the Senate and House of Representatives, and alleges a failure of the Legislature to obey these provisions, and that such failure constitutes such Legislature an illegal body, whose acts are not entitled to respect and obedience, except in such matters where the court decides them to be just and equitable, and that taxes levied by such illegal body is a denial of equal protection of the laws, and a deprivation of property without due process of law.

It further alleges that the uniform tax of 25 cents per acre was levied before any estimate of the expenses of survey, etc., provided for by the act, which expenses were to be paid by said levy; that subsequent to said levy an estimate was made. and thereafter a resolution was adopted by said board, ratifying and approving said levy, and books containing the description of the lands in said Broward drainage district were prepared and certified according to the act, and filed with the tax collectors of Dade and Broward counties for the collection of said acreage tax, and that said tax collectors are proceeding to collect the same; that persons owning lands in said district have paid said tax, some under protest and some without protest; that under said chapter 7430 said tax is made a lien upon the lands upon which it is assessed.

Thereupon the bill sets out certain proceedings of the board of commissioners in the levy of the uniform acreage tax of 25 cents per acre, and extensions of the time for payment of the same, and claims all such actions illegal and the tax void.

The bill next claims that the term of office created by the Legislature for Kyle, chairman of the board, is longer than four years, and therefore Kyle is not a member of the board, and the attempted organization of June 15, 1917, was illegal and void, and, the time having passed for such organization, no legal board exists, and the levy of the tax is illegal.

Section III of the bill alleges the passage of the swamp and overflowed lands act by Congress (Act Sept. 28, 1850, c. 84, 9 Stat. 519 [Comp. St. 1916, §§ 4958–4960]); that the Legislature by appropriate legislation vested the title to said lands in the trustees of the internal improvement fund in trust, for the purposes of reclaiming said lands; that in 1905 the trustees, for the purpose of selling said lands, adopted a map or plat of the same, by projecting the township and section lines from the surveyed lands surrounding the Everglades, and had the same recorded in the counties of Dade and Palm Beach; that in 1911, upon actual survey of the lands. a different location was given to the lands, although the same numbers and descriptions were re-

tained; that complainants bought lands by the first maps and by the adoption of the maps of 1911 they are unable to pay taxes on the lands owned by them.

Section III then proceeds to allege the adoption of legislation creating the Everglades drainage district for the purpose of reclaiming the entire body of the Everglades lands, the creation of the board of commissioners of the Everglades drainage district, and enumeration of their duties and powers, and the right to levy taxes for the purpose of carrying out the purposes and duties imposed; that all the lands included in the Napoleon B. Broward drainage district are included within the boundaries of said Everglades drainage district; that the taxes levied by reason of the acts prior to chapter 7430 are made liens on all of said lands; that in all deeds made by the trustees to purchasers, between 1907 and 1911, reservations for rights of way, canals, and other works necessary for the reclamation of said lands were contained; that the taxes assessed under chapter 7430 are in part to pay damages and costs of rights of way already reserved, and are therefore the taking of property under the guise of taxation—a taking of property without just compensation, within the Fourteenth Amendment of the Constitution of the United States, and this denies to the owners of the lands within the Broward drainage district the equal protection of laws, and deprives them of property without due process of law; that said Everglades were appropriated to drainage purposes by the United States and state of Florida, and was a trust, and that 1,500,000 acres of said lands are still held by the trustees; that the trust property is not exhausted; that the levy and assessment of the drainage taxes and liens created as provided in the acts creating the Everglades district constitute a second appropriation, nullifying the first appropriation, although the first is not exhausted; that by chapter 7430 there is a third appropriation for the same purpose; that this act is an unwarranted abuse of legislative power, and is not due process of law, etc.

Section IV then proceeds to set out that the trustees, under the act establishing the Everglades drainage district and acts amendatory thereof, were carrying out the reclamation of said lands, and that by reason of the sale of lands by the trustees after undertaking their reclamation, and the purchase of said lands by persons between 1905 and 1911, and the payment of purchase money applicable to such project, said purchasers and their grantees acquired a vested right in and to the application of said lands and proceeds of sale to the drainage and reclamation of their lands.

Section V alleges that the board of supervisors have incurred debts and liabilities to a large amount, and have received large amounts of said uniform tax paid under protest, and other large amounts paid not under protest, which amounts ought in justice to be returned to the parties paying same, because said uniform tax is illegal; that the board has no means of paying the liabilities, except this uniform tax, and therefore a receiver ought to be appointed to pay the liabilities and return the balance to the parties paying said tax in the proportion the same was paid.

Then follows the prayer, section VI, praying for 11 specific reliefs: That Kyle was not a member of the board; that said board was illegally organized, and all proceedings had under the attempted organization are void; that the levy of the uniform tax before the estimate of the amount necessary was void; that the assessment of said uniform tax was excessive, without warrant of law, and void; that the uniform tax was assessed upon lands wrongfully described, and is void; that the uniform tax was levied for the same purposes as the Everglades drainage district taxes, and is void; that sufficient funds are on hand and available to carry out the purposes for which the uniform tax is assessed, and said tax is void; that the levy of all Broward drainage district taxes are illegal and void; that all forfeitures of lands within said last-named district by reason of the nonpayment of said taxes are void; that all deeds, tax certificates, and other evidences of unpaid district taxes are void; and, lastly, that the matters complained of in the bill deny the landowners in said district the equal protection of the laws and deprive them of property without due process of law.

Section VII prays in addition that said chapter 7430, and the taxes and liens authorized thereby, and the proceedings of the board of supervisors, may be by the order of this court declared null and void, and the defendants be enjoined from proceeding to levy and collect all taxes against the complainants, and others similarly situated; that the uniform taxes paid under protest be restored to the persons paying the same; that the legal debts of said district and the board be paid, and the balance, if any, be distributed to persons who paid same without protest; that a receiver be appointed for all moneys and property of said board, and account for the same to this court; that each of the defendants be restrained from collecting the uniform tax; that the defendants be restrained from forfeiting or selling lands within the district or issuing tax certificates, etc., for the nonpayment of taxes; that a temporary restraining order be issued against the defendants, enjoining them from executing any of the provisions of chapter 7430, and upon final hearing said injunction shall be made permanent.

April 26th application was made for a temporary restraining order. May 1st a motion to dismiss the bill was made by the defendants on various grounds. They may be succinctly stated as follows: (1) This court is without jurisdiction, because the jurisdiction is based upon a federal question being involved, and the bill shows no federal question. (2) That the bill is multifarious, in seeking relief against the defendants for distinct matters and causes of action.

The motion seeks dismissal of certain portions of the bill: (1) That portion of the bill which seeks to have the court declare a part of the uniform acreage tax void, because no part of the tax was tendered, and does not offer to do equity. (2) That part of the bill seeking to have this court declare W. C. Kyle not a member of the board, and praying to have him removed from office. (3) That part of the bill seeking to have a receiver appointed for the said drainage district. (4) That part of the bill assailing the act, because the Bro-

ward drainage district is contained within the Everglades drainage district, and that sufficient funds are on hand to complete the work outlined by the prior acts. (5) Paragraph II of the bill, because complainants seek to have a law declared invalid because of irregularities in proceedings of the board. (6) Paragraph III of the bill, because no federal question is involved, and complainants cannot be heard to complain of the matters therein set out. (7) Paragraph IV of the bill, because the Legislature acted within its powers in the creation of the drainage district. (8) Certain portions of the bill, setting out the constitutional provisions of the state of Florida, bearing upon the representation and apportionment of the Senate and House of Representatives.

As to the application of the complainants for a temporary restraining order, what was said on the application for an interlocutory injunction in this case applies to and disposes of the application. Equity rule 73 (198 Fed. xxxix, 115 C. C. A. xxxix).

[1] I now come to the motion to dismiss the bill. Is there a federal question raised? The bill, while voluminous, containing many matters, still a careful study of it shows that, while the pleader's main idea was to have the court declare the entire act unconstitutional, without any specific attack upon section 7, under which the tax was levied, does contain allegations that said section of the act deprives them of their property without due process of law. The Supreme Court of Florida, in a recent case, decided that said section was unconstitutional and the taxes levied thereunder void. A. C. Redman v. W. C. Kyle et al., as Board of Supervisors of Broward Drainage District (not yet officially reported) 80 South. 300. This decision was based upon the want of notice to the taxpayer by reason of the restriction of defenses contained in section 21 of the act. The tax authorized by this section 7 is therefore violative of the Fourteenth Amendment to the Constitution of the United States, as well as the Constitution of the state of Florida, and I think is a federal question, and vests this court with jurisdiction, provided the matter in controversy exceeds $3,000 in value, exclusive of interest and costs.

[2-4] The bill alleges generally that the amount in controversy exceeds $3,000, exclusive of interest and costs, and makes Exhibit A, attached to the bill, a part of the same, and prays reference. This has the same effect as though the facts set out in Exhibit A were alleged in the body of the bill. By this exhibit the Everglades Sugar & Land Company own some 17,000 acres of land in Broward county, in the confines of the Broward drainage district, upon which the tax of 25 cents per acre was assessed. This exhibit therefore shows the jurisdictional amount in controversy in Broward county between one of the complainants and all the defendants, except the tax collector of Dade county. This being so, the joinder of the other parties complainant and the tax collector of Dade county as defendant ceases to be a jurisdictional question, and the motion to dismiss the bill for want of jurisdiction will be denied.

[5, 6] The next general ground for the dismissal of the bill is that it is multifarious. A bill is not multifarious, if it be single as to

the subject-matter and object thereof and the relief sought, if all the defendants are connected, though differently, with the whole subject of dispute. In the instant case the main object of the bill is to have chapter 7430 declared violative of the Fourteenth Amendment to the Constitution of the United States, and the tax authorized therein void. Each of the complainants are interested in the subject-matter, although in different amounts, and each of the defendants are connected, though differently with the whole dispute. Rule 38 of the Equity Rules (198 Fed. xxix, 115 C. C. A. xxix) provides that when the question is one of common or general interest to many persons, constituting a class so numerous as to make it impracticable to bring them all before the court, one or more may sue or defend for the whole. The bill in this case is filed by the complainants representing a class under said rule. I do not understand that, because the complainants may pray for relief to which they may not be entitled, the bill thereby is made multifarious; nor would the allegations in the bill of facts that may not be material to the relief that will be granted have this effect. I am therefore of opinion that the motion to dismiss on the ground that the bill is multifarious is not well taken.

Motions were made to strike certain portions of the bill. These portions are not specifically pointed out, except as to paragraphs II, III, and IV, and pages 18 b, c, and d of the bill.

[7] Taking up the first motion to strike pages 18, c and d, these pages are amendments to the first paragraph of the bill, and set out sections 3, 4, and 5 of article 7 of the Constitution of the state of Florida, which require the Legislature every ten years to apportion the representation and for taking a census, and then alleges the refusal of the Legislature to do this, and therefore this refusal to obey this constitutional requirement makes void the taxes levied pursuant to laws passed by a Legislature elected subsequent to such refusal. If this contention is correct, it would upset all the laws passed subsequent to 1897. The statement of the effect of the court undertaking to declare invalid a law passed by a Legislature regularly organized and recognized as the existing legislative body by the executive of the state, because a census had been taken, but no apportionment of representation made, seems to me sufficient to condemn the contention of the bill. But the Legislature passing chapter 7430 was the Legislature de facto, and its acts are therefore binding. This I understand from the authorities to be the law, and no authority contra has been cited to me. The motion to strike pages 18 b, c, and d will be granted.

Taking up next the motion to strike paragraph IV of the bill, this paragraph, as I understand it, contends that the state took the swamp and overflowed lands under the act of 1850, with a trust affixed, to use these lands and the proceeds of sale for the purpose of reclaiming them, and in the execution of the trust conveyed them to the trustees of the internal improvement fund; that subsequently the Everglades drainage district was formed, and a board of commissioners appointed therefor. Power to levy taxes, etc., was granted for the purpose of reclaiming the lands, and lien of such taxes de-

clared; that subsequent to the formation of this Everglades drainage district chapter 7430, creating the Napoleon B. Broward drainage district, was passed. The boundaries defined, and the powers given for the purpose of reclamation, and the lands contained in this last-named district are included also in the Everglades drainage district.

There seem to be two main contentions in this paragraph: (1) That there is a trust attaching to these lands under the act of 1850, that they and the proceeds of the sale of same shall be devoted to their reclamation until all shall have been exhausted; and (2) that, the Everglades drainage district having been established, it was not in the power of the Legislature by a special act to carve out of the territory covered by the Everglades drainage district the Broward drainage district. The first contention seems to be authoritatively decided against the complainants' contention, by the case of Hagar v. Reclamation District, 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569. The claim of the complainants that as citizens of the United States they attempt to enforce a law of the United States and not the grant is without merit, it seems to me.

[8] The second contention is, it seems to me, equally without merit. Under the authorities, as I view them, it is within the authority of the Legislature to create a subdistrict for reclamation of a larger district theretofore created. The distinction between ordinary taxes levied for general governmental purposes and assessments for improvements has been pointed out in a number of cases. It is for the Legislature to decide the question of the necessity for such improvements and the area and manner of making same, unless there is such a flagrant abuse of the power, because of arbitrary and wholly unwarranted legislative action, as would authorize a court of equity to intervene to protect a constitutional right of the landowner. The motion to strike the fourth paragraph of the bill will be granted; the facts therein stated not being a basis for relief by this court.

Paragraph III of the bill alleges in substance that the trustees of the internal improvement fund in 1905, in order to sell said lands, adopted a map or plat of the Everglades, dividing said lands into sections and townships by projecting the lines of the United States surveys of the surrounding lands, and filed the same for record in the recording offices of Dade and Palm Beach counties, as well as recording same in the records of the trustee; that in 1907 amendments were made to this map, and copies of same duly filed in Dade and Palm Beach counties; that said trustees in 1911 made a new division of all the Everglades land, and substituted arbitrary and different lines for the division of 1905 and 1907, changing the location of the section, township, and range lines, thereby changing the sections and townships included therein from those made by the maps of 1905 and 1907; that the sections, townships, and ranges shown on the map of 1911 are numbered the same as shown on the map of 1905 and 1907, but in fact describe other and different lands; that complainants and their predecessors in title bought their lands from the trustees under and pursuant to the map of 1905 and 1907; that certain areas of land in the Everglades are not included in any section under

the division of 1911, but townships and ranges were widely separated by such areas; that no map of the division of 1911 has been recorded in Dade, Palm Beach, or Broward counties, but the division of 1911 has been carried out in a new sectional map of Florida authorized by the commissioner of Agriculture, one of the said trustees, and published by the department of Agriculture, which last map includes the Broward drainage district and the lands upon which the uniform tax was levied; that the supervisors of the Broward drainage district are preparing and threatening to survey the lands within said district according to the division of 1911. The section contains copies of the different maps referred to.

[9] The motion to dismiss under the equity rules, as I understand it, takes the place of a demurrer and admits the facts alleged. This suit is primarily to enjoin the uniform acreage tax. The facts that complainants or their predecessors in title purchased land pursuant to one map, and the trustees arbitrarily changed said map, changing the location of the lands purchased, retaining the same designations, but in fact making such designations describe other and different lands than those described by such designations, according to the map pursuant to which the purchase was made, and the taxes being levied according to the last division, are material, it seems to me, to the questions raised in this suit, and without explanation would entitle the complainants to some of the relief prayed. This motion will therefore be denied.

Paragraph II alleges the organization of the board of supervisors on June 15th, the day named in such act for the organization; the passage of the resolution levying the uniform tax, etc.; on August 3d the adoption of a resolution apportioning the estimate of expenses and ratifying the resolution levying the tax adopted June 15th; the report of the secretary of the board and acceptance of same, and instructions to turn over the tax books to the tax collectors of Dade and Broward counties. The section then alleges certain resolutions of the board instructing such tax collectors to retain the books. This section then proceeds to allege the provisions of sections 7 and 14 of article 16 of the state Constitution, and claims that chapter 7430 violates the provisions of section 7, in that it creates the office of drainage supervisor for a period greater than four years, and undertakes to show how; that therefore the board was not legally organized at the meeting in June, and therefore the tax was void; that the levy was made without an estimate first made; that the levy was excessive; that the levy was not made until August 14th, when the secretary made his report; that the tax collectors of Dade and Broward counties did not make delinquent returns as required by the act.

There seem to be three main grounds of attack on the tax by this section:

[10] First. That the act creates an office for more than four years, and therefore there is no board of supervisors, and consequently no legal tax levied. A careful reading of the act convinces me that this ground is untenable. The term of office is fixed at four years from June 15, 1917, by the act itself.

The second ground of attack is because the tax was levied before the estimate of expense; but the paragraph shows the estimate was made and the estimate approved and the resolution of June 15th ratified.

[11] Again, that the board, instead of having the collectors return the books as delinquent, authorized said books to be retained and tax continued to be collected. This action, if unauthorized, would not invalidate the tax.

[12] And also that the tax was excessive, and the estimate contained items not properly expenses. It is true the paragraph shows $19,900 in excess of the engineers' estimate of expense, provided every dollar of the tax was paid. I do not conceive that a tax levy will be declared excessive, and therefore void, because the levied tax of 25 cents per acre, instead of 24½ cents, would produce a surplus over the estimated expenses. The cost of survey, etc., necessary to formulate a scheme of reclamation, must at best be an estimate before the work is done, and this acreage tax was provided by the Legislature to pay such expenses. It would be impossible to tell with mathematical certainty the amount of the expense before the work was done. I am of opinion that such a difference in the amount of the estimate and the amount expected to be raised by the tax would not constitute an excessive levy or invalidate the tax. The motion to strike paragraph II of the bill will therefore be granted.

[13] The twelfth ground of the motion undertakes to reach certain portions of the bill, by setting out the effect of the portions to which it refers. This is not, I think, good practice. As I understand the law, the court cannot be required to wade through an entire pleading to find out what portion is attacked by the motion. For this reason I have not considered the twelfth ground.

This disposes of all matters submitted to me on the hearing. An order will be prepared pursuant to the foregoing memorandum.